# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-CA-00660-COA

DENHAM LAW FIRM, PLLC                                    APPELLANT

v.

WRONGFUL DEATH BENEFICIARIES AND                        APPELLEES
HEIRS-AT-LAW OF KIMBERLY ANN
SIMMONS, DECEASED: DAVID MICHAEL
NELSON AS ADMINISTRATOR OF THE
ESTATE OF KIMBERLY ANN SIMMONS;
DAVID ANTHONY NELSON; SAVANNAH
SIMMONS; MISTY LOPER; SHANNON
SIMMONS; RACHEL BENEFIELD AND
TERESSA NICOLE NELSON, A MINOR, BY
AND THROUGH HER GUARDIAN, SHERYL
PHILLIPS

| | |
|---|---|
| DATE OF JUDGMENT: | 03/19/2015 |
| TRIAL JUDGE: | HON. HOLLIS MCGEHEE |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | EARL L. DENHAM |
| | ALEXANDER IGNATIEV |
| | MATTHEW PAUL PAVLOV |
| ATTORNEYS FOR APPELLEES: | KRISTOPHER W. CARTER |
| | ALBERT R. JORDAN IV |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| TRIAL COURT DISPOSITION: | GRANTED PARTIAL SUMMARY JUDGMENT TO THE APPELLEES |
| DISPOSITION: | REVERSED AND REMANDED - 01/03/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE IRVING, P.J., CARLTON AND GREENLEE, JJ.**

**CARLTON, J., FOR THE COURT:**

¶1.     The six wrongful-death beneficiaries and heirs-at-law of Kimberly Simmons settled

a wrongful-death lawsuit and then filed the instant action to determine the fees and costs

owed to Denham Law Firm PLLC under contingent-fee contracts signed by four of the beneficiaries.[1] In their declaratory-judgment complaint filed in Jackson County Chancery Court, the beneficiaries sought a determination of the rights and money owed under the contingent-fee contracts. The beneficiaries claimed that the contracts' attorney's lien provision for the value of services actually performed at Denham Law's normal hourly rates and for all the firm's costs applied rather than the contracts' contingency-fee provision.

¶2. The beneficiaries subsequently filed a motion for partial summary judgment. They argued that no genuine issue of material fact existed as to the applicability of the contracts' attorney's lien provision. They also asserted that no genuine issue of material fact existed as to the calculation of the attorney's lien as defined by the terms of the contracts.

¶3. In granting partial summary judgment to the beneficiaries, the chancellor found that four of the six beneficiaries entered into contingent-fee contracts with Denham Law. The chancellor further found that the beneficiaries then terminated the firm's representation. The chancellor also determined that the beneficiaries' termination of Denham Law's representation triggered the attorney's lien provision in the contracts. In interpreting the contracts' terms, the chancellor applied the attorney's lien provision that provided reimbursement for actual services performed at normal hourly rates and for actual costs. The chancellor then concluded that Denham Law's attorney's fees amounted to $10,708.64 and

---

[1] *See* Miss. Code Ann. § 11-7-13 (Rev. 2004) (establishing a cause of action in Mississippi for wrongful-death beneficiaries).

that its costs amounted to $14,791.05. The chancellor denied Denham Law's motion to reconsider or to alter or amend the grant of partial summary judgment, and Denham Law appeals to this Court.

¶4.     On appeal, Denham Law raises the following issues: (1) whether the chancellor erred by finding that the beneficiaries had standing to sue Denham Law; (2) whether the chancellor erred by modifying the contract terms between Denham Law and the beneficiaries; (3) whether the chancellor erred by not finding that the beneficiaries' attorneys breached a fiduciary duty to Denham Law; and (4) whether the chancellor erred by not disqualifying the beneficiaries' attorneys from representing the beneficiaries in this case.

¶5.     Upon review of the chancellor's grant of partial summary judgment, we find no evidence in the record to support the chancellor's determination that the beneficiaries terminated Denham Law. Due to the lack of such evidence, we find the record reflects a dispute of material fact as to whether the contracts' attorney's lien provision applied.[2] As a result, we reverse the chancellor's judgment and remand the case for further proceedings consistent with this opinion.[3]

---

[2] *See also Franklin v. Franklin ex rel. Phillips*, 858 So. 2d 110, 117 (¶22) (Miss. 2003) ("[A]n attorney whose efforts contribute to obtaining a settlement or in enhancing a settlement is entitled to attorney['s] fees."); *Pannell v. Guess*, 671 So. 2d 1310, 1315 (Miss. 1996) (holding that the chancellor should have allowed the attorney of one of the beneficiaries to prove he was entitled to some compensation from the other five beneficiaries for his work in negotiating the settlement from which all the beneficiaries derived financial benefit).

[3] After due consideration of the record, briefs, oral arguments, and applicable law, the majority opinion herein respectfully addresses the legal issues necessarily involved to

3

**FACTS**

¶6.     On October 20, 2010, Simmons hired Denham Law to represent her in a medical-malpractice lawsuit.  Earl Denham, Denham Law's president and partner, stated in his affidavit that Simmons chose his firm due to Denham Law's advertising and reputation.  After Simmons died on April 21, 2011, four of her six beneficiaries entered into contingent-fee contracts with Denham Law to represent them in the derivative wrongful-death lawsuit.  Each of the four contracts contained the following language:

> I do hereby assign, convey, transfer, and deliver unto said [a]ttorneys as their fees . . . an undivided [f]orty [p]ercent (40%) interest in and to all of my above[-]mentioned claim and all sums which may be recovered on my behalf.  It is my said attorney's sole discretion as to when suit shall be filed.  This contract does not bind either party with regard to appeal, and in fact[,] the attorneys specifically have no responsibility to file any postjudgment pleadings.  It is understood and agreed that[,] in addition to [a]ttorney['s] fees, all costs and expenses of this litigation will be reimbursed to my [a]ttorneys by me on my claim at the time of settlement.  It is further understood and agreed that *my [a]ttorneys may act as co-counsel or associate with any other attorney at no extra cost to me at my [a]ttorneys' sole discretion*.
>
> I do hereby grant to Denham Law . . . *an attorney's lien* for the value of its services actually performed at its normal hourly rate and for all its costs, advances, and expenses of whatever nature in connection with my claim, including but not limited to [the] fees of associates and paralegals.  Any proceeds that I receive from my litigation will be delivered in a check or draft payable to the firm of Denham Law . . . and to me, jointly, to secure payment of the firm's attorney's lien.  *This paragraph shall survive any termination of this contract for any reason.*

resolve this appeal.  The special concurrence agrees that the chancellor's grant of summary judgment should be reversed and remanded.  However, the separate opinion's discussion advocating a rule change to the Uniform Chancery Court Rules is extraneous to the resolution of the instant appeal.  This Court lacks the authority to impose such a rule change.

4

(Emphasis added).

¶7. According to Denham's affidavit opposing summary judgment, his firm utilized its own resources to obtain the expert opinions and the research needed to prepare the lawsuit. Denham also stated that it was his firm's advertising and reputation that initially secured this case. The record reflects no dispute as to Denham's statement in his affidavit that his firm filed the lawsuit in Harrison County Circuit Court on August 22, 2012. The lawsuit was later removed to federal court on January 7, 2013. Following their termination around September 12, 2013, Kristopher Carter and Albert Jordan left Denham Law and began their own law firm. Thus, the parties agree that, at the time Denham Law filed the lawsuit on the beneficiaries' behalf, Carter and Jordan both worked as attorneys for Denham Law. The parties also agree that Carter, as an employee of Denham Law, worked on both the medical-malpractice lawsuit and the subsequent wrongful-death case.

¶8. After terminating Carter and Jordan, Denham traveled to Ohio for heart surgery. In his affidavit, Denham asserted that, during this time, two or more of his employees "removed confidential firm information, including case file information and forms [that] had been developed with considerable expense to the firm over many years[,] and [the employees] delivered [the material] to Carter and Jordan, who continue to use [the information] in their own practice." On appeal, Denham asserted during oral argument, as he did in his affidavit, that the removal of information from his office was done without his authorization or agreement. Denham further claims that Carter and Jordan removed the file for the present

5

case from Denham Law without the agreement or consent of Denham Law. The beneficiaries submitted no evidence to contradict or dispute Denham's affidavit.

¶9.    After their departure from Denham Law, Carter and Jordan obtained a settlement offer in federal court on the beneficiaries' wrongful-death action. The beneficiaries then placed the instant matter before the chancery court by filing their declaratory-judgment action on July 23, 2014, to determine the amount owed to Denham Law under the firm's contingent-fee contracts with four of the beneficiaries. The declaratory-judgment complaint asserted that the four beneficiaries who initially engaged Denham Law had terminated the firm's representation, and then all six of the beneficiaries had signed contracts with Carter and Jordan's firm. As previously stated, however, the record before this Court contains no evidence to show that the beneficiaries terminated Denham Law's representation.

¶10.    The beneficiaries further alleged in their complaint that Denham Law refused to provide the amount of the attorney's lien that the firm claimed against the beneficiaries' settlement proceeds. The beneficiaries therefore asked in their complaint that the chancellor apply the attorney's lien provision of the contingent-fee contracts and determine the amount of the attorney's lien to which Denham Law was entitled. The beneficiaries also requested in their complaint that the chancellor award attorney's fees based on Denham Law's alleged refusal to honor the lien clause contained in the contingent-fee contracts.

¶11.    In response to the beneficiaries' July 23, 2014 declaratory-judgment complaint, Denham Law filed a pre-answer motion on July 31, 2014, that sought the following:  (1)

6

dismissal of the beneficiaries' complaint under Rule 12(b)(6) of the Mississippi Rules of Civil Procedure for failure to state a claim upon which relief could be granted; (2) dismissal of the beneficiaries' complaint due to the beneficiaries' lack of standing; (3) disqualification of Carter and Jordan as the beneficiaries' attorneys; (4) sanctions against Carter and Jordan under Rule 11 of the Mississippi Rules of Civil Procedure; (5) damages against Carter and Jordan under the Litigation Accountability Act; and (6) all other appropriate sanctions and relief.[4]

¶12. On August 4, 2014, the Mississippi Supreme Court appointed a special judge to hear the matter. On August 25, 2014, Denham Law filed its responses to the requests for admission propounded by the beneficiaries. The following month, on September 15, 2014, the beneficiaries filed a motion for partial summary judgment. The beneficiaries asserted that no genuine issue of material fact existed as to whether the terms of Denham Law's contracts with four of the beneficiaries defined the proper calculation method of the attorney's lien. As a result, the beneficiaries sought summary judgment on that issue.

¶13. On September 22, 2014, Denham Law filed another motion seeking to disqualify Carter and Jordan as the beneficiaries' attorneys. As in its earlier motion filed on July 31, 2014, Denham Law again asserted that Carter and Jordan were material witnesses in the matter and that the chancellor should therefore disqualify them from representing the

---

[4] *See* M.R.C.P. 12(a)(1) (discussing how the filing of a permitted Rule 12(b) motion alters and extends the time period for filing a responsive pleading).

beneficiaries. As also argued in the July 31, 2014 motion to dismiss, Denham Law claimed that the beneficiaries possessed no cause of action against the firm, possessed no standing to sue, and had suffered no damages. Significant to the procedural posture of this case, the chancellor issued no ruling on Denham Law's motion to dismiss the beneficiaries' complaint for lack of standing until he granted the beneficiaries partial summary judgment.[5] The chancellor's grant of the dispositive motion requesting partial summary judgment is the subject of the instant appeal.

¶14. On October 16, 2014, the chancellor entered an order denying Denham Law's motions to disqualify the beneficiaries' attorneys, for sanctions under Rule 11, and for damages under the Litigation Accountability Act. However, as stated, the chancellor issued no ruling at that time on either Denham Law's motion to dismiss for lack of standing or its motion to dismiss for failure to state a claim under Rule 12(b)(6). Instead, the chancellor ruled on these bases of Denham Law's motion to dismiss when he granted the beneficiaries partial summary judgment.

¶15. The chancellor executed his order granting partial summary judgment on January 19, 2015, and the chancery clerk entered the order on January 22, 2015. In the summary-judgment order, the chancellor found the beneficiaries possessed standing to sue Denham Law in this matter. The chancellor determined that, because the beneficiaries had terminated Denham Law's representation, the attorney's lien contained in the contracts between Denham

---

[5] *See* M.R.C.P. 12.

Law and the four beneficiaries applied to define the calculation of Denham Law's attorney's lien. Based on his findings, the chancellor concluded that, under the terms of the lien provision in the contracts, Denham Law was entitled to "the value of its services actually performed at its normal hourly rate and for all its costs, advances, and expenses of whatever nature in connection with the claim, including but not limited to [the] fees of associates and paralegals."

¶16. On February 2, 2015, within ten days of the entry of the chancellor's judgment, Denham Law filed an unsuccessful motion to reconsider the chancellor's judgment or to alter or amend the chancellor's judgment pursuant to Rule 59 of the Mississippi Rules of Civil Procedure. In his final judgment, the chancellor affirmed his prior ruling finding that the terms of the contracts between Denham Law and the beneficiaries defined the proper calculation method of Denham Law's attorney's lien. The chancellor further acknowledged that the parties had agreed that Denham Law's itemized attorney's fees amounted to $10,708.64 and that its costs amounted to $14,791.05. As a result, the chancellor granted Denham Law an attorney's lien for each of these amounts. Aggrieved by the chancellor's ruling, Denham Law appeals.

## STANDARD OF REVIEW

¶17. With regard to a motion to reconsider, this Court has previously stated:

> The Mississippi Rules of Civil Procedure provide two avenues to move the trial court to reconsider its judgment. The aggrieved party may (1) file a motion for a new trial or to alter or amend under Rule 59 or (2) file for a relief from a final judgment under Rule 60(b). The timing of the motion to

9

reconsider determines whether it is a Rule 59 or Rule 60(b) motion.

> A motion to reconsider filed within ten days of the entry of the judgment falls under Rule 59 and tolls the thirty-day time period to file a notice of appeal until the disposition of the motion. Consequently, a notice of appeal following the denial of a Rule 59 motion to reconsider encompasses both the denial of reconsideration and the underlying judgment.

*Woods v. Victory Mktg. LLC*, 111 So. 3d 1234, 1236 (¶¶6-7) (Miss. Ct. App. 2013) (internal citations omitted).

¶18. In the present case, Denham Law filed its motion to reconsider within ten days of the entry of the chancellor's judgment granting the beneficiaries partial summary judgment. Denham Law's motion therefore falls under Rule 59(e). As a result, on appeal we address the merits of the chancellor's grant of partial summary judgment to the beneficiaries.

¶19. This Court reviews de novo the chancellor's grant or denial of a motion for summary judgment. *Evans v. Aydha*, 189 So. 3d 1225, 1227 (¶2) (Miss. Ct. App. 2016). As our caselaw establishes:

> Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, show that there is no genuine issue of any material fact and that the moving party is entitled to a judgment as a matter of law. The movant bears the initial burden of persuading the judge that no issue of material fact exists and that, as a matter of law, he is entitled to summary judgment based on the facts.

*Walz v. HWCC-Tunica Inc.*, 186 So. 3d 375, 376 (¶7) (Miss. Ct. App. 2016) (internal citations omitted).

¶20. Although we view the evidence for summary judgment in the light most favorable to the party opposing the motion, the nonmovant "may not rest upon the mere allegations or

10

denials of his pleadings, but his response must set forth specific facts showing that there is a genuine issue for trial." *Evans*, 189 So. 3d at 1227 (¶¶3-4) (citations omitted). In addition:

> When a party, opposing summary judgment on a claim or defense as to which that party will bear the burden of proof at trial, fails to make a showing sufficient to establish an essential element of the claim or defense, then all other facts are immaterial, and the moving party is entitled to judgment as a matter of law.

*Id.* at (¶4) (quoting *Galloway v. Travelers Ins.*, 515 So. 2d 678, 684 (Miss. 1987)).

## DISCUSSION

¶21.    We find the second issue raised by Denham Law to be dispositive since the record reflects a genuine issue of material fact that precludes summary judgment. We therefore decline to address the remaining assignments of error. After reviewing the present matter under the applicable de novo standard of review, and after applying controlling caselaw, we find the record reflects a dispute of genuine issue of material fact as to whether the attorney's lien provision of the contingent-fee contracts controlled. As a result, we reverse the chancellor's grant of partial summary judgment to the beneficiaries and remand the case for further proceedings consistent with this opinion. *See Walz*, 186 So. 3d at 376 (¶7).

¶22.    Denham Law's second assignment of error states that the chancellor erred by modifying the terms of the contingent-fee contracts between Denham Law and four of the beneficiaries. Denham Law argues that, despite the existence of a dispute of material facts, the chancellor enforced the attorney's lien provision over the other terms of the contracts. Denham Law further asserts that its contracts with the four beneficiaries clearly contained

11

both an attorney's lien and the assignment of "an undivided [forty percent] interest in and to all of [the beneficiaries'] claims and all sums recovered on their behalf." Denham Law also contends that the chancellor erred both in his interpretation of the contracts' terms and by only enforcing the clause as to the attorney's lien. According to Denham Law, the chancellor erred by ignoring the contracts' clause that assigned the firm the forty percent contingent fee. In addition, Denham Law asserts that a dispute of material fact exists as to the actual hours of work Denham Law and its former associates performed on the case and as to the substantial benefit derived from Denham Law's work that contributed to the subsequent settlement.

¶23. According to Denham Law, the contracts' terms require a termination of the firm by the beneficiaries to trigger the contracts' attorney's lien provision. Denham Law claims, though, that the record lacks evidence to show that the beneficiaries ever terminated Denham Law's legal services. In its argument, Denham Law also asserts that the record contains no evidence to show the following: (1) an agreement between Denham Law and its former employees, Carter and Jordan, as to a division of client case files; (2) the severance of any existing attorney-client relationship between the beneficiaries and Denham Law; (3) an accounting of the actual hours that former employees spent working on the medical-malpractice litigation while still employed at Denham Law; or (4) the benefit derived from Denham Law's contribution to the settlement. In asserting that the accounting of those hours of work remains contested, Denham Law argues that a material factual dispute exists as to

12

that issue. Relevant to that issue, we acknowledge the record shows that, on its face, the contingent-fee provision contained in the contracts allows Denham Law to act as co-counsel or to associate with other attorneys.[6]

¶24. As previously provided, the record reflects Denham's affidavit assertions that his firm's advertising, connections, and reputation led to the firm securing the clients in this case and led to the firm's initial involvement in the medical-malpractice litigation. Denham further contended that his firm used its resources and connections to obtain expert opinions, investigate the case, and conduct the research necessary to file and pursue the litigation. As stated, the history of this case shows that Simmons first hired Denham Law on October 20, 2010, and that four of her beneficiaries later contracted with Denham Law for the firm to also represent them in the derivative wrongful-death lawsuit. Denham Law then filed the wrongful-death lawsuit in circuit court on August, 22, 2012. The lawsuit was removed to federal court on January 7, 2013. Around September 12, 2013, Denham Law terminated Carter and Jordan. The record clearly shows that Denham Law represented the beneficiaries both when the lawsuit was initially filed and when it was later removed to federal court. The record fails to factually establish, however, when, if ever, the beneficiaries terminated Denham Law's representation.

¶25. In *Franklin v. Franklin ex rel. Phillips*, 858 So. 2d 110, 112 (¶2) (Miss. 2003), the

___

[6] *See* Miss. R. Prof. Conduct 1.5(a) (stating that an attorney's fee shall be reasonable); Miss. R. Prof. Conduct 1.5(e) (providing for the division of a fee between attorneys who are not part of the same law firm).

attorney of one heir filed the first wrongful-death action, and the attorney of another heir filed the second action. The supreme court found an implied contract between the attorneys for payment of attorney's fees from the settlement. *Id.* at 121 (¶36). The supreme court held that the attorney who filed the second lawsuit was entitled to compensation under his contract with his client. *Id.* at 123 (¶47). The supreme court further found that a third attorney who was associated as co-counsel and contributed substantial time and effort in bringing about the settlement should receive compensation. *Id.*

¶26. In the present case, a determination of the compensation due to Denham Law necessarily requires us to determine whether Denham Law's representation was terminated or whether the representation continued in some capacity. As presented in their declaratory-judgment complaint, the issue raised by the beneficiaries clearly rests upon the language and terms of Denham Law's contingent-fee contracts with the four beneficiaries and upon whether the facts relevant to those contract conditions or contingencies are undisputed in the record. In addition to reviewing de novo the chancellor's grant of partial summary judgment, this Court reviews de novo questions involving the construction and interpretation of contracts. *Royer Homes of Miss. Inc. v. Chandeleur Homes Inc.*, 857 So. 2d 748, 751 (¶4) (Miss. 2003). As Mississippi precedent establishes, "[an] attorney's right to recover a contingency fee cannot vest until the contingency, for which he has contracted, has occurred." *Tyson v. Moore*, 613 So. 2d 817, 824 (Miss. 1992) (citation omitted). Our caselaw also recognizes a law firm's right to "recover the reasonable value of its services

14

upon termination of its employment under [a] contingent[-]fee contract . . . ." *Poole v. Gwin, Lewis & Punches LLP*, 792 So. 2d 987, 990 (¶9) (Miss. 2001) (citations omitted).[7]

¶27.    In applying de novo review to the chancellor's grant of partial summary judgment, we also look to precedent involving contract interpretation for guidance. In *Royer*, the supreme court established the following three-tiered approach for analyzing issues of contract construction and interpretation:

> First, the "four corners" test is applied, wherein the reviewing court looks to the language that the parties used in expressing their agreement. We must look to the "four corners" of the contract whenever possible to determine how to interpret it. When construing a contract, we will read the contract as a whole, so as to give effect to all of its clauses. Our concern is not nearly so much with what the parties may have intended, but with what they said, since the words employed are by far the best resource for ascertaining the intent and assigning meaning with fairness and accuracy. Thus, the courts are not at liberty to infer intent contrary to that emanating from the text at issue. On the other hand, if the contract is unclear or ambiguous, the court should attempt to harmonize the provisions in accord with the parties' apparent intent. Only if the contract is unclear or ambiguous can a court go beyond the text to determine the parties' true intent. The mere fact that the parties disagree about the meaning of a contract does not make the contract ambiguous as a matter of law.
>
> Secondly, if the court is unable to translate a clear understanding of the parties' intent, the court should apply the discretionary "canons" of contract construction. Where the language of an otherwise enforceable contract is subject to more than one fair reading, the reading applied will be the one most favorable to the non-drafting party. Finally, if the contract continues to evade clarity as to the parties' intent, the court should consider extrinsic or parol evidence. It is only when the review of a contract reaches this point that prior negotiation, agreements[,] and conversations might be considered in

_____

[7] *Cf. Estate of Stevens v. Wetzel*, 762 So. 2d 293, 295 (¶11) (Miss. 2000) (discussing whether, in a lawsuit for the recovery of attorney's fees, the complaint provided notice of a cause of action for conversion).

determining the parties' intentions in the construction of the contract. Of course, the so-called three-tiered process is not recognized as a rigid "step-by-step" process. Indeed, overlapping of steps is not inconceivable.

*Royer*, 857 So. 2d at 752-53 (¶¶10-11) (internal citations and quotation marks omitted).

¶28. Jurisprudence provides further guidance for interpreting contracts that involve conditions or contingencies. Jurisprudence reflects that parol or extrinsic evidence is admissible to show the existence of a condition. *Butler v. Smith*, 35 Miss. 457, 463-64 (1858); *see also Estate of Parker v. Dorchak*, 673 So. 2d 1379, 1381-82 (Miss. 1996) (discussing the admissibility of parol evidence). In *Dibidale of Louisiana Inc. v. American Bank & Trust Co.*, 916 F.2d 300, 307-08 (5th Cir. 1990), the Fifth Circuit found parol evidence was admissible to show the existence of a condition in a bank loan. Instructive to our review, the *Dibidale* court further found that a dispute of material fact as to the condition precluded summary judgment on that issue. *Id.*

¶29. Also helpful to our analysis in this case involving a condition or contingency, our caselaw defines a condition precedent "as a 'condition which must be performed before the agreement of the parties shall become a binding contract or a condition which must be fulfilled before the duty to perform an existing contract arises.'" *Austin v. Carpenter*, 3 So. 3d 147, 149-50 (¶12) (Miss. Ct. App. 2009) (quoting *Turnbough v. Steere Broad. Corp.*, 681 So. 2d 1325, 1327 (Miss. 1996)). In *Turnbough*, the supreme court found that, if a fact or an event is a condition precedent to a duty to perform, its absence or nonoccurrence

16

constitutes a defense and can reflect a dispute of fact. *Turnbough*, 681 So. 2d at 1327.[8]

While the case before us on appeal involves no condition precedent, it does involve a determination of whether the condition or contingency of termination occurred or whether Denham Law's representation continued and, if so, in what capacity.

¶30. The beneficiaries assert that the contracts' attorney's lien provision controls due to the occurrence of Denham Law's termination. To determine whether Denham Law was terminated requires parol or extrinsic evidence. In pertinent part, each of Denham Law's contracts with the four beneficiaries stated the following:

> I do hereby assign, convey, transfer, and deliver unto said [a]ttorneys as their fees . . . an undivided [f]orty [p]ercent (40%) interest in and to all of my above[-]mentioned claim and all sums which may be recovered on my behalf. It is my said attorney's sole discretion as to when suit shall be filed. This contract does not bind either party with regard to appeal, and in fact[,] the attorneys specifically have no responsibility to file any postjudgment pleadings. It is understood and agreed that[,] in addition to [a]ttorney['s] fees, all costs and expenses of this litigation will be reimbursed to my [a]ttorneys by me on my claim at the time of settlement. It is further understood and agreed that *my [a]ttorneys may act as co-counsel or associate with any other attorney at no extra cost to me at my [a]ttorneys' sole discretion*.

> I do hereby grant to Denham Law . . . an attorney's lien for the value of its services actually performed at its normal hourly rate and for all its costs, advances, and expenses of whatever nature in connection with my claim, including but not limited to [the] fees of associates and paralegals. Any proceeds that I receive from my litigation will be delivered in a check or draft payable to the firm of Denham Law . . . and to me, jointly, to secure payment of the firm's attorney's lien. *This paragraph shall survive any termination of this contract for any reason.*

---

[8] *Cf. Estate of Parker*, 673 So. 2d at 1381-82 (finding that the language of a promissory note was ambiguous and, thus, parol evidence was admissible).

17

(Emphasis added).

¶31.   As discussed, in granting the beneficiaries partial summary judgment, the chancellor stated that the beneficiaries terminated Denham Law in 2013 and subsequently hired Carter and Jordan.  However, the record reflects no evidence to show either that the beneficiaries terminated Denham Law's representation or when such termination occurred.  The record also reflects no admission by Denham Law as to any termination by the beneficiaries.  Moreover, the record contains no evidence to show any agreement between Denham Law and its former employees, Carter and Jordan, as to a division of the client files removed from Denham Law following Carter and Jordan's termination.  The record also reflects no evidence of any agreement as to severance of the attorney-client relationships.[9]  In addition, the beneficiaries presented no evidence by testimony, affidavits, or otherwise to contradict Denham's affidavit opposing summary judgment or to provide evidence of the termination of Denham Law's representation.

¶32.   During oral argument, Carter and Jordan asserted that the allegations in the beneficiaries' complaint sufficed to establish the beneficiaries' termination of Denham Law's representation.  However, the allegations in the beneficiaries' complaint constituted bare assertions and nothing more.  Denham Law filed a pre-answer motion to dismiss under Rule

_____

[9] *See Ownby v. Prisock*, 243 Miss. 203, 207-08, 138 So. 2d 279, 280 (1962) ("[I]f the contract is shown to have been obtained by fraud, mistake, or undue influence, if it is so excessive in proportion to the services to be rendered as to be in fact oppressive or extortionate, if the attor[ne]y suppresses the facts of the case, or if he uses any unfairness in securing it, the contract will be held invalid." (citation omitted)).

18

12(b)(6), and the chancellor did not dispose of Denham Law's motion to dismiss for lack of standing until he granted partial summary judgment.[10]

¶33. As acknowledged, we review de novo a grant or denial of summary judgment, and we view the evidence in the light most favorable to the nonmovant. *Evans*, 189 So. 3d at 1227 (¶¶2-3). Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact . . . ." M.R.C.P. 56(c).

¶34. The plain language of the contingent-fee contracts between Denham Law and the four beneficiaries provides Denham Law with a forty percent interest to and in all claims and sums recovered on the beneficiaries' behalf. The contingent-fee contracts further state that Denham Law may act as co-counsel or associate with any other attorney at Denham Law's discretion.[11] The contracts then provide Denham Law with an attorney's lien that survives termination and calls for the value of the firm's services actually performed at its normal hourly rate and for all its costs and expenses, including the fees of associates and paralegals. The interpretation of the contracts and the chancellor's application of the contracts'

---

[10] *See* M.R.C.P. 12(a)(1) (expressly providing that the filing of a permitted Rule 12(b) motion alters and extends the time period for filing a responsive pleading). *See generally* Jeffrey Jackson, Donald E. Campbell & Justin L. Matheny, *Mississippi Practice Series: Mississippi Civil Procedure* § 16:12 (2016) (discussing the effect of a summary-judgment motion on the time allowed for filing an answer).

[11] *See Franklin*, 858 So. 2d at 122 (¶42) ("The wrongful death statute does not by its express terms limit the case to one lawyer or otherwise limit each heir's choice of her own counsel.").

attorney's lien provision require evidence of the termination of Denham Law's representation.

¶35. The lack of evidence in the record to show the beneficiaries' termination of Denham Law's representation results in a genuine issue of disputed material fact as to the applicability of the attorney's lien provision in the contracts.[12] Consequently, the record also reflects a dispute of material fact in this case as to the compensation due to and the actual services performed by Denham Law and as to the calculation of Denham Law's fees and expenses. As a result, we reverse the chancellor's grant of partial summary judgment to the beneficiaries and remand the case for further proceedings consistent with this opinion.

¶36. **THE JUDGMENT OF THE JACKSON COUNTY CHANCERY COURT IS REVERSED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEES.**

**LEE, C.J., IRVING, P.J., AND GREENLEE, J., CONCUR. BARNES AND FAIR, JJ., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. WILSON, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. GRIFFIS, P.J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION, JOINED IN PART BY FAIR, J. ISHEE AND WESTBROOKS, JJ., NOT PARTICIPATING.**

**GRIFFIS, P.J., SPECIALLY CONCURRING:**

¶37. I agree with the majority that the chancellor's final judgment that granted summary

---

[12] *See UHS-Qualicare Inc. v. Gulf Coast Cmty. Hosp. Inc.*, 525 So. 2d 746, 753 (Miss. 1987) (finding that, when a party to a contract commences a civil action for a declaratory judgment, the court is not limited to either accepting the plaintiff's verison of the contract or dismissing the action; instead, the court should apply controlling principles of law to the facts and declare the parties' rights, status, or other legal relations).

judgment should be reversed and remanded. However, I do not agree with the majority's reasoning. The majority addresses a number of legal concepts that I do not believe are necessary.

¶38. In *Karpinsky v. American National Insurance*, 109 So. 3d 84, 88-89 (¶¶ 9-11) (Miss. 2013), the Mississippi Supreme Court addressed the appropriate standard of review and the summary judgment standard:

### I. Standard of Review

We review the grant or denial of a motion for summary judgment de novo, viewing the evidence in the light most favorable to the party against whom the motion has been made.

### II. The Summary-Judgment Standard

Summary judgment is appropriate and shall be rendered if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Importantly, the party opposing summary judgment may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, will be entered against him.

This Court has explained that in a summary judgment hearing, the burden of producing evidence in support of, or in opposition to, the motion is a function of Mississippi rules regarding the burden of proof at trial on the issues in question. The movant bears the burden of persuading the trial judge that: (1) no genuine issue of material fact exists, and (2) on the basis of the facts established, he is entitled to judgment as a matter of law. The movant bears the burden of production if, at trial, he would bear the burden of proof on the issue raised. In other words, the movant only bears the burden of production where [he] would bear the burden of proof at trial. Furthermore, summary judgment is appropriate when the non-moving party has failed to make a

21

showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial.

(Citations and quotation marks omitted).

¶39. In my de novo review, I have considered the motion for summary judgment filed by the Appellees, who were the plaintiffs and are the wrongful-death beneficiaries and heirs-at-law of Kimberly Simmons. The motion for summary judgment does not include any affidavits. Attached to the motion were a couple of letters and Denham Law's response to requests for admissions. I also have considered the brief filed by the Appellees, where they included the following statement of facts:

> Kimberly Ann Simmons died from lung cancer on April 21, 2011. [Compl., R. at 1.] Surviving Ms. Simmons were her six adult children, David Nelson, Savannah Simmons, Misty Loper, Rachel Benefield, Shannon Simmons and Shane Nelson. [*Id*. at 6.] Shane Nelson later passed away as well, and was survived by his daughter, Teressa Nicole Nelson, a minor. Guardianship of Teressa was assumed by her maternal grandmother, Sheryl Ann Phillips. In early 2012, four of the children (Savannah Simmons, David Nelson, Misty Loper and Shannon Simmons) entered into contracts with DLF to represent them in a medical malpractice/wrongful death action arising from an alleged failure to diagnose cancer leading to their mother's death. [Compl. Exs., R. at 8-12.] DLF never entered into contracts with Teressa Nicole Nelson or Rachel Benefield. [Denham's Resp. to Req. for Admis., R. at 35.] DLF's contracts with the four heirs it represented included a clause which stated as follows:
>
>> I do hereby grant to DENHAM LAW FIRM, PLLC an attorney's lien for the value of its services actually performed at its normal hourly rate and for all its costs, advances, and expenses of whatever nature in connection with my claim, including but not limited to fees of associates and paralegals. Any proceeds that I receive from my litigation will be delivered in a check or draft payable to the firm of DENHAM LAW FIRM, PLLC and to me, jointly, to secure payment of the firm's attorney's lien. This paragraph shall survive the termination of

22

this contract for any reason.

[Compl. Exs., R. at 8-12] (emphasis added). The three heirs with whom DLF had contracts were represented exclusively by Kristopher W. Carter, a partner at DLF, during their time at that firm. [*Id*.; Notice of Attorney Lien attached to Denham's Resp. to Req. for Admis.] On September 12, 2013, Kristopher W. Carter and Albert R. Jordan, IV were "dismissed" from DLF by Earl L. Denham because they would not agree to buy his law firm at his terms, and were ejected from the building by Denham on the spot. [Denham Law's Resp. to Mot. for Summ. J., R. at 45.] Kristopher W. Carter and Albert R. Jordan, IV, formed the law firm of Carter & Jordan, PLLC, shortly thereafter. [Compl., R. at 3.] Upon learning of Carter and Jordan's departure, the heirs/beneficiaries with whom DLF had contracts terminated DLF's services. [*Id.*] DLF immediately filed Notices of Attorney Lien for the work performed at DLF on the case prior to Carter's and Jordan's departure. [Exs. H and I to Denham Law's Resp. to Mot. for Summ. J., R. at 76-80.] Over the next few months, all of the heirs/wrongful death beneficiaries (Savannah Simmons, David Nelson, Misty Loper, Rachel Benefield, Teressa Nicole Nelson and Shannon Simmons) contracted with Carter & Jordan, PLLC, to represent them in the wrongful death/medical malpractice suit. [Compl., R. at 3.] After extensive litigation in federal court, C&J reached a tentative settlement of the lawsuit on behalf of the Heirs. [*Id*.] C&J requested DLF's lien amount to finalize the settlement, but DLF refused to state the amount of its lien (even when requested to do so by the federal magistrate judge). [Pl.'s Mot. for Summ. J., R. at 29.] Accordingly, the Heirs had no choice but to file a Complaint for Declaratory Judgment in the Chancery Court of Jackson County, Mississippi, on July 23, 2014, asking that the court enforce the terms of DLF's contract defining its attorney lien. [Compl., R. at 1.] The Heirs additionally served Requests for Admission on DLF, to which DLF later responded. [R. at 35-38.] Inter alia, DLF explicitly admitted the following: (1) that its contracts with the former clients all contained the referenced termination clause; (2) that the contracts contain a provision defining the amount of its lien in the event of termination of employment of DLF; (3) that DLF was bound by these contracts; and (4) that it refused to agree to a lien calculation in accordance with its own contract. [R. at 35-38.] The Heirs filed a Motion for Summary Judgment regarding the lien calculation and the enforceability of the contract clause, which, after holding a hearing, the Court granted on January 22, 2015. [R. at 28, 94.] Indeed, when Earl L. Denham was directly asked by the chancellor during the hearing, "the real issue is the client contract, is it not?"; he replied "Yes, sir." [Tr. at 8.] The Court explained its rejection of

23

DLF's argument during the hearing, stating, "I know this. I know that these people have a contract with your law firm, and they filed a dec action which is a classic dec action litigation to say what are our rights under that contract." [Tr. at 16.] DLF further expressly waived its request for sanctions and any counterclaims, cross-claims and third party claims it might have. [Tr. at 46.] DLF filed motions to dismiss and to disqualify counsel, claiming that the Heirs did not have standing to bring suit, and that Carter and Jordan should be disqualified as counsel because they were "material witnesses," but the Special Chancellor denied those motions. The Special Chancellor ruled, in his Order on the Motion for Summary Judgment, that the Heirs did have standing to bring suit, and that DLF's lien was defined by the terms of its own contract. [R. at 94-95.] After the parties stipulated as to the dollar amount of DLF's time and expenses on the case, the trial court entered its Final Order and Judgment on March 20, 2015, stating the amount certain of DLF's lien. [R. at 114.]

(Footnote omitted).

¶40. I have also considered the affidavit Denham Law filed in response to the motion for summary judgment. In that affidavit, Denham Law offered evidence of his firm's contract and questioned whether Carter and Jordan had a separate contract. This indicated that there is a genuine issue of a material fact as to whether Carter and Jordan's contractual agreement was based on the Denham Law contract, or whether there was a new contract that terminated the Denham Law contract. The significance of this issue is that this genuine issue of a material fact may decide under which of the two paragraphs in the contract Denham Law was entitled to be compensated.

¶41. Accordingly, I find that the Appellees have failed to satisfy their burden of proving that no genuine issue of material fact exits and they are entitled to a judgment as a matter of law. For this reason, I would reverse and remand for further proceedings.

24

¶42. In addition, I believe this case points to an inconsistency in the Mississippi Rules of Court that should be addressed.

¶43. If a motion for summary judgment is filed in circuit or county court, Rule 4.03 of the Uniform Rules of Circuit and County Court provides in relevant part:

The provisions of this rule shall apply to all written motions in civil actions.

1. The original of each motion, and all affidavits and other supporting evidentiary documents shall be filed with the clerk in the county where the action is docketed. The moving party at the same time shall mail a copy thereof to the judge presiding in the action at the judge's mailing address. A proposed order shall accompany the court's copy of any motion which may be heard ex parte or is to be granted by consent. Responses and supporting evidentiary documents shall be filed in the same manner.

2. ***In circuit court a memorandum of authorities in support of any motion to dismiss or for summary judgment shall be mailed to the judge presiding over the action at the time that the motion is filed. Respondent shall reply within ten (10) days after service of movant's memorandum. A rebuttal memorandum may be submitted within five (5) days of service of the reply memorandum. Movants for summary judgment shall file with the clerk as a part of the motion an itemization of the facts relied upon and not genuinely disputed and the respondent shall indicate either agreement or specific reasons for disagreement that such facts are undisputed and material***. Copies of motions to dismiss or for summary judgment sent to the judge shall also be accompanied by copies of the complaint and, if filed, the answer.

3. Accompanying memoranda or briefs in support of other motions are encouraged but not required. Where movant has served a memorandum or brief, respondent may serve a reply within ten (10) days after service of movant's memorandum or brief. A rebuttal memorandum or brief may be served within five (5) days of service of the reply memorandum.

(Emphasis added).

¶44. The Uniform Chancery Court Rules do not have a similar procedure. There is no reason that the procedures in circuit, chancery, and county courts are not the same with respect to motions for summary judgment. Here, it would have been helpful to the determination of the motion for the chancellor and this Court to have the benefit of the movants' "itemization of the facts relied upon and not genuinely disputed" and to have Denham Law "indicate either agreement or specific reasons for disagreement that such facts are undisputed and material." I call upon the supreme court to amend the Uniform Chancery Court Rules to include a provision similar to Rule 4.03 of the Uniform Rules of Circuit and County Court.

**FAIR, J., JOINS THIS OPINION IN PART.**