# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-CA-00028-COA

| | |
|---|---|
| **JANET EVANS** | **APPELLANT** |

**v.**

| | |
|---|---|
| **MOSLEH AYDHA D/B/A JB'S CONVENIENCE STORE** | **APPELLEE** |

| | |
|---|---|
| DATE OF JUDGMENT: | 11/18/2014 |
| TRIAL JUDGE: | HON. JAMES LAMAR ROBERTS JR. |
| COURT FROM WHICH APPEALED: | PONTOTOC COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | GEORGE E. DENT |
| | WILLIAM LOWERY SNEED |
| ATTORNEY FOR APPELLEE: | CHRIS H. DEATON |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| TRIAL COURT DISPOSITION: | SUMMARY JUDGMENT GRANTED IN FAVOR OF APPELLEE |
| DISPOSITION: | REVERSED AND REMANDED: 04/19/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**FAIR, J., FOR THE COURT:**

¶1.    This is a premises-liability case.  While pumping gas at JB's Convenience Store in Pontotoc, Janet Evans slipped and fell, hitting her head on the pavement.  Evans sued the owner and manager, Mosleh Aydha, claiming he had failed to properly maintain the service station in a reasonably safe condition based on the presence of an oily spot on the concrete where she fell.  The trial court granted JB's summary judgment after finding that there was "no evidence of what [the] spot was, how it got there, how long it had been there, or whether or not the Defendant knew or should have known about [it]."  But after our own de novo

review of the record, we conclude that, giving Evans the benefit of reasonable inferences, she produced sufficient circumstantial evidence to survive summary judgment. We reverse and remand.

## STANDARD OF REVIEW

¶2. "We employ a de novo standard of review of a trial court's grant or denial of summary judgment and examine all the evidentiary matters before it . . . ." *Davis v. Hoss*, 869 So. 2d 397, 401 (¶10) (Miss. 2004). Summary judgment is proper when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." M.R.C.P. 56(c).

¶3. "The evidence is viewed in the light most favorable to the party opposing the motion." *Davis*, 869 So. 2d at 401 (¶10). "Summary judgment is improper when the plaintiff has advanced enough circumstantial evidence to take [her] claims out of the realm of 'mere conjecture' and plant them in the solid ground of 'reasonable inference.'" *Buckel v. Chaney*, 47 So. 3d 148, 156 (¶26) (Miss. 2010) (citation omitted).

¶4. "[A]n adverse party may not rest upon the mere allegations or denials of his pleadings, but his response . . . must set forth specific facts showing that there is a genuine issue for trial." M.R.C.P. 56(e). Furthermore:

> [W]hen a party, opposing summary judgment on a claim or defense as to which that party will bear the burden of proof at trial, fails to make a showing sufficient to establish an essential element of the claim or defense, then all other facts are immaterial, and the moving party is entitled to judgment as a

2

matter of law.

*Galloway v. Travelers Ins.*, 515 So. 2d 678, 684 (Miss. 1987).

## DISCUSSION

¶5.     There is no dispute that Evans was a business invitee. *See Grammar v. Dollar*, 911 So. 2d 619, 624 (¶12) (Miss. Ct. App. 2005) (defining business invitee as "someone who enters onto another's premises at the invitation of the owner . . .").  The owner of a business is not required to insure against all injuries, even for an invitee; instead, he "owes a duty to an invitee to exercise reasonable or ordinary care to keep the premises in a reasonably safe condition or to warn of dangerous conditions not readily apparent, which the owner or occupant knows of, or should know of, in the exercise of reasonable care." *Robinson v. Ratliff*, 757 So. 2d 1098, 1101-02 (¶12) (Miss. Ct. App. 2000).  The owner has no duty to warn of a defect or danger that is as well known to the invitee as to the owner, of dangers that are known to the invitee, or of dangers that are obvious or should be obvious to the invitee in the exercise of ordinary care. *Grammar*, 911 So. 2d at 624 (¶12).

¶6.     Evans must prove either (1) that JB's negligence injured her, (2) that JB's had knowledge of the dangerous condition and failed to warn her, or (3) that the condition existed for a sufficient amount of time so that JB's should have had knowledge or notice of the condition (constructive knowledge). *Anderson v. B.H. Acquisition Inc.*, 771 So. 2d 914, 918 (¶8) (Miss. 2000) (citation omitted).  Evans takes the third path, alleging that she slipped and fell on a black, oily spot on the pavement, knowledge of which could be imputed to JB's

3

based on its weathered, dirty condition.

¶7.    JB's devotes much of its brief to arguing that Evans failed to show she was injured by a dangerous condition of its property in the first place. In the alternative, it contends she failed to prove the oily spot had been there long enough to constructively impart knowledge of its existence to JB's.

¶8.    According to JB's, Evans never actually claimed to have slipped on the black spot in her deposition. She stated that she was standing at the pump, waiting for the attendant inside the store to turn it on, when she slipped and fell. The following exchange occurred when Evans was deposed by the defense attorney:[1]

> Q.    Now, what did you slip on?
>
> A.    I don't know what it was. It just looked like a black spot . . . on the pavement.
>
> Q.    Did you later figure out what it was?
>
> A.    I have no idea.
>
> . . . .
>
> Q.    Do you know how long that block [sic] spot had been on the ground?
>
> A.    I have no idea.
>
> Q.    Do you know how it came to be there?
>
> A.    No, sir.

---

[1] For clarity, we have omitted repeated verbal acknowledgements made by the attorney.

Q.     While you were on the ground, did you figure out what the black spot was?

A.     No. I looked and I could not tell you.

Q.     Had you seen the black spot before you slipped on it?

A.     I did not.

Q.     When did you see it?

A.     After I hit the ground.

¶9.     JB's argues that Evans's initial statement "I don't know what it was" was an admission that she did not know what she had slipped on. The trial judge does not seem to have found this argument compelling, and neither do we. Considering the entire response and the exchange that followed, we are of the opinion that, at the very least, Evans's testimony can be interpreted to mean that she had slipped on the black spot, and that she did not know what it was composed of. Even the attorney for JB's appears to have reached that conclusion – at the time, at least – as evidenced by his subsequent questions, particularly: "Had you seen the black spot before you slipped on it?" Since the evidence must be viewed in the light most favorable to Evans's case, a genuine issue of material fact exists here.

¶10.     JB's also seems to argue that Evans's testimony should be disregarded because she testified that she had been looking where she was going, yet she did not see the black spot until after she fell. This is, at best, a subject for cross-examination. "[E]ven when the statements [of the plaintiff] are conflicting it is a jury question to determine which, in fact, is true." *Seymour v. Gulf Coast Buick Inc.,* 246 Miss. 805, 809, 152 So. 2d 706, 708 (1963)

5

(citations omitted). "Contradictory statements by a witness go to the weight and credibility of that [witness's] testimony, not its sufficiency." *Jamison v. Barnes*, 8 So. 3d 238, 245 (¶17) (Miss. Ct. App. 2008). "[A] summary judgment motion does not place the trial court in the role of weighing testimony and determining the credibility of witnesses." *Id.*

¶11. The question of causation being resolved, the real issue in this case is whether there was proof the black spot had been there long enough to impute constructive knowledge of its existence to JB's. For that, Evans offered the affidavit of her daughter, who said that she was notified after the accident. She went to the scene and found her mother's car still parked at the pump. She noticed a spot of "black oily residue or sludge" near the pump, where her mother had fallen.[2] The spot was "mostly black, dirty, and it was obvious to me that the oily residue had been on the pavement for an extended period of time, at least several days." The spot "looked slippery."

¶12. JB's contends that the daughter's affidavit is a sham and should be disregarded. It is true that a party cannot defeat summary judgment "with an affidavit of a witness that contradicts facts asserted in that witness's prior deposition testimony, unless the affidavit explains the discrepancy." *Id.* (citing *Foldes v. Hancock Bank*, 554 So. 2d 319, 321 (Miss. 1989)). But as we explained in *Jamison*, there has to be an actual, material contradiction. *See id.* at 244-45 (¶¶16-20). Here, only a few pages of the daughter's deposition were made

---

[2] The daughter testified by deposition that she had seen a surveillance video recording of the fall. The video was not preserved, apparently because the owner of JB's, Aydha, did not know about the incident.

a part of the record, and nowhere was she ever asked directly whether she had personally seen the black spot in question, whether she had visited the scene of her mother's fall that day, etc.

¶13.   The closest JB's comes to arguing an actual contradiction is its suggestion that the daughter learned of the black spot from her mother in the hospital, but that she later claimed in her affidavit to have gone to the scene of the accident and seen the black spot herself.  JB's argues that the daughter could not go to the hospital, visit her mother, and then go to the scene to be there "a matter of minutes" after the fall.[3]  But the daughter never stated she first learned of the black spot from her mother; she was asked in the deposition what her mother had told her.  And the daughter did not say she had been told of the black spot when she observed it at the gas station; she did not say what, if anything, she had been told about what had occurred there other than that she had been "notified."  She simply stated that she observed the black spot when she went there.  We see no contradiction that exposes the daughter's affidavit as a sham.

¶14.   Next, JB's presents a rather cursory argument that the spot described by the daughter was not necessarily the same spot upon which Evans slipped.  The argument is based on the questionable assertion that the daughter's description of the spot "does not in any way match the description of the spot as testified to by Evans."  Obviously, they are both black and in

---

[3] The short timeframe appears to be an assertion of Evans's counsel and is unsupported by the actual record.

7

the same place. It is true that the daughter's description is more specific, describing it as slippery, dirty, and oily. But Evans had just fallen so hard that, it was observed, her head literally bounced off the ground and hit the pavement twice. It is certainly within the realm of reasonable inferences that the daughter was describing the same spot, and her description is more detailed because she was in a better position to make detailed observations.

¶15. As to whether the black spot observed by the daughter could have been created after the fall, it is true that the daughter did not state exactly how long it had been since her mother fell, other than it apparently occurring on the same day. But she described the spot as old, and she testified that her mother's car was still parked next to the pump when she arrived. The spot was in a rather confined space between Evans's vehicle and the pump – a place it would be unlikely for a third person to come along in the meantime and create another black spot, so long as Evans's vehicle remained parked at the pump. Evans must be given the benefit of reasonable inferences, and the inference that the two spots were one and the same is reasonable.

¶16. We are also quite convinced that the length of time the spot had existed can be reasonably inferred from the daughter's testimony describing it as "sludge," "dirty," and, in her judgment, at least a few days old. Circumstantial evidence may be used to prove the length of time a dangerous condition has existed, so long as it "creates a legitimate inference that places it beyond conjecture." *Herrington v. Leaf River Prods. Inc.*, 733 So. 2d 774, 777 (¶8) (Miss. 1999). In *Ducksworth v. Wal-Mart Stores Inc.*, 832 So. 2d 1260, 1262 (¶4) (Miss.

8

Ct. App. 2002), this Court found that a directed verdict was erroneously entered for the defendant in a case where spilled liquid "was dirty, with shoe prints and cart tracks in it." Similarly, in *Moore v. Winn Dixie Stores Inc.*, 252 Miss. 693, 697, 173 So. 2d 603, 604 (1965), our supreme court reversed a directed verdict in a case where a banana peel was found after the fall to be "black in color," "soiled up," and "must have been there a little while." We are satisfied that from the daughter's description of the spot, a reasonable inference can be made that it existed long enough to place JB's on constructive notice of its existence.

¶17. Finally, with all due respect to the dissent, the daughter did not need to personally witness the fall to testify that the black spot was in the same place the fall was alleged to have occurred, as the location of the fall was established by other evidence the daughter was undoubtedly familiar with. She testified to speaking with her mother about the incident, to observing her mother's vehicle parked at the pump afterwards, and to watching a surveillance video of her mother's fall.

¶18. The daughter was required to have personal knowledge only of the material facts asserted in her affidavit – the location of the black spot, its appearance, and its composition. She had personal knowledge of these things because she went to the scene of the fall and personally observed them.

¶19. We find a genuine issue of material fact exists as to all the elements of Evans's slip-and-fall claim, and so we reverse the summary judgment against her and remand the case for

9

a trial on the merits.

¶20.   **THE JUDGMENT OF THE CIRCUIT COURT OF PONTOTOC COUNTY IS REVERSED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.  ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.**

   **LEE, C.J., IRVING, P.J., BARNES, ISHEE, JAMES, WILSON AND GREENLEE, JJ., CONCUR.  GRIFFIS, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY CARLTON, J.**

   **GRIFFIS, P.J., DISSENTING:**

¶21.   The majority reverses and remands the trial court order granting summary judgment to Aydha.  I disagree and respectfully dissent.

¶22.   The majority finds each of Evans's issues on appeal involves genuine issues of material fact.  However, I am of the opinion that no genuine issue of material fact exists as to every element of Evans's claim, and the trial court correctly granted summary judgment.  I would find that Evans failed to present sufficient evidence that Aydha had constructive knowledge of the spot.

¶23.   The majority correctly notes the elements for Evans's premises-liability claim.  Evans must specifically prove: "(1) a negligent act by the defendant caused the plaintiff's injury; or, (2) that defendant had actual knowledge of a dangerous condition, but failed to warn the plaintiff of the danger; or, (3) the dangerous condition remained long enough to impute constructive knowledge to the defendant." *Byrne v. Wal-Mart Stores Inc.*, 877 So. 2d 462, 465 (¶5) (Miss. Ct. App. 2003) (quoting *Downs v. Choo*, 656 So. 2d 84, 86 (Miss. 1995)).

¶24.   In *Byrne*, the plaintiff (Byrne) claimed she fell on an unidentified substance, which

10

she believed was a cookie, in a store aisle. *Id.* at 464 (¶2). Byrne, however, could not identify the particular substance, prove the store knew of the substance, or show how long the substance was in the aisle to impute constructive knowledge to the store. *Id.* at 465-66 (¶¶7, 9). This Court stated that "[p]roof merely of the occurrence of a fall on a floor within [a] business premises is insufficient to show negligence on the part of the proprietor. Proof that the floor on which the fall occurred had present thereon litter and debris is similarly insufficient." *Id.* at 465 (¶6) (quoting *Sears, Roebuck & Co. v. Tisdale*, 185 So. 2d 916, 917 (Miss. 1966)). Therefore, this Court affirmed the summary-judgment order because Byrne failed to meet her burden under *Downs*. *Id.* at 466 (¶10).

¶25. Similar to *Byrne*, Evans did not demonstrate that Aydha had actual or constructive knowledge of the spot to meet the knowledge requirement under *Downs*. Evans admits she cannot prove actual knowledge, but relies on the constructive-knowledge prong.

¶26. "Constructive knowledge is established where the condition is shown to have existed for such a length of time that the operator, through the exercise of reasonable care, should have known of . . . its existence." *Almond v. Flying J Gas Co.*, 957 So. 2d 437, 439 (¶8) (Miss. Ct. App. 2007) (citing *Munford Inc. v. Fleming*, 597 So. 2d 1282, 1284 (Miss. 1992)). Evans testified in her deposition that she could not identify the substance or the length of time the substance stayed on the concrete. In rebuttal to Aydha's motion for a summary judgment, Evans proffered the affidavit of her daughter, Loyd.

¶27. Loyd stated that when she arrived at the scene, she noticed her mother's car, and

11

observed a black spot "where my mother slipped and fell near the gas pump." Loyd further attested that "[t]he oily residue was mostly black, dirty and it was obvious to me that the oily substance had been on the pavement for an extended period of time, at least several days." Loyd's affidavit establishes the presence of a spot and her opinion of the length of time the spot was on the concrete. Loyd, however, did not observe her mother's fall and could not attest to personal knowledge of whether Evans fell on the spot identified by Loyd, especially in light of Evans's failure to describe the condition of the spot herself.

¶28. The *Almond* court stated that "[this] court will not indulge presumptions for the deficiencies in [the] plaintiff's evidence as to the length of time the hazard existed[;] therefore, the plaintiff must produce admissible evidence as to the time period in order to establish the operator's constructive knowledge. The plaintiff must present specific proof as to the relevant actual length of time." *Id.* (citations omitted). *Almond* is comparable.

¶29. Like here, Almond claimed she fell on a slick spot at a gas station. *Id.* at 438 (¶1). Almond could neither identify the substance nor how long the substance was on the ground. *Id.* at (¶3). This Court affirmed the summary-judgment order and found that Almond failed to offer admissible evidence to establish the length of time the substance was there in order to establish constructive knowledge. *Id.* at 440 (¶10).

¶30. Evans attempts to distinguish her case from *Almond* because the defendant in *Almond* produced an affidavit regarding the cleaning practices of the gas station, unlike Aydha, who had no cleaning policy in place. This difference, however, is not dispositive. Aydha does

12

not bear the burden to disprove Evans's assertion of constructive knowledge. Rather the burden falls to Evans to prove the condition of the spot in order to establish constructive knowledge.

¶31. This case is distinguishable from *Almond* in one sense. Evans did produce Loyd's affidavit as evidence of the spot's condition, in contrast to *Almond*. But the persuasiveness of Loyd's affidavit depends on the inference that the spot Loyd identified was the same spot Evans slipped on. This Court, however, rejected Almond's argument based on similar inferences. *Id.* Therefore, Evans failed to produce sufficient evidence to support the constructive-knowledge element of her claim to withstand the summary-judgment challenge.

¶32. Based on the precedents in *Byrne* and *Almond*, I would find Evans did not present sufficient evidence for all of the elements of her claim to establish a genuine issue of material fact to overcome summary judgment. Thus, I would affirm the trial court's grant of summary judgment to Aydha.

**CARLTON, J., JOINS THIS OPINION.**