# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-CA-01382-COA

**FLOYD PARSON JR.**                                                                      **APPELLANT**

**v.**

**GO KNIGHTRIDER LLC**                                                                **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 09/25/2017 |
| TRIAL JUDGE: | HON. ALBERT B. SMITH III |
| COURT FROM WHICH APPEALED: | BOLIVAR COUNTY CIRCUIT COURT, SECOND JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | STEPHANIE NICOLE MORRIS |
| ATTORNEYS FOR APPELLEE: | ROBERT P. THOMPSON |
| | PAUL PACIFIC BLAKE |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED - 07/16/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE CARLTON, P.J., LAWRENCE AND C. WILSON, JJ.

### CARLTON, P.J., FOR THE COURT:

¶1.     Floyd Parson Jr. filed a negligence action against Go Knightrider LLC (GK) in Bolivar County Circuit Court, alleging he was injured when he slipped and fell on a slippery substance at GK's convenience store/gas station.  GK moved for summary judgment, asserting, among other grounds, that Parson lacked sufficient evidence to support his negligence claim because even if a dangerous condition existed on its premises, Parson failed to show GK had constructive notice of it.  GK also moved to dismiss Parson's lawsuit, with prejudice, for discovery abuse.  The circuit court granted GK's summary judgment motion, finding that Parson failed to offer sufficient evidence to overcome summary judgment that

GK had constructive knowledge of the allegedly dangerous condition on its premises. In the alternative, the circuit court granted GK's motion to dismiss Parson's lawsuit, with prejudice, for discovery abuse.

¶2.     Parson appeals, asserting that the circuit court erred in granting both motions. Finding no error in the circuit court's decision to grant summary judgment in GK's favor, we affirm the circuit court's judgment on this basis. Our resolution of Parson's appeal (affirming summary judgment in GK's favor) renders a discussion of Parson's challenge to the circuit court's alternative decision to dismiss his lawsuit for discovery abuse unnecessary.

## FACTS AND PROCEDURAL HISTORY

¶3.     The record reflects that on June 9, 2014, Parson purchased gas and several items at GK, a convenience store and gas station in Cleveland, Mississippi. Parson slipped and fell in a slippery substance as he left the store. On May 15, 2015, Parson filed a negligence lawsuit against GK in the Second Judicial District of Bolivar County Circuit Court seeking damages for injuries he allegedly incurred when he fell.[1]

¶4.     In his complaint, Parson described a "liquid substance" on the GK premises, and alleged that he slipped and fell in a "puddle of water, gas, oil[,] and/or greasy like substance" that was located between the gas pumps and the front door of the store. In his sworn, written discovery responses served September 24, 2015, Parson described this "puddle" as follows: "[T]he size of the puddle was approximately 3 to 4 foot long and 2 feet wide. Mr. Parson knows he was in some sort of motor oil due to the rainbow effect of the colors, and [it] was

_____

[1] Parson claims that as a result of his fall he suffered phantom leg pains and injured his back, necessitating two back surgeries.

2

very slick and thick."

¶5.     Parson was deposed on May 3, 2016, nearly two years after his fall.  In his deposition, Parson was asked about the "puddle" he described in his complaint.  During this questioning, Parson said that the description of the substance in his complaint as a "puddle" was "incorrect."  He testified that "if I said that, I said that [in the complaint, but] . . . [i]t was not a puddle."  When asked about the "liquid substance" he described in his complaint, he said, "I wasn't in anything wet . . . when I landed."  Parson testified that it was "the oil, gasoline, whatever it was mixed in with the dirt and whatever.  Evidently, it was there and had been there for quite a while.  It wasn't something that had just been applied.  It had been there for a few days at least."  Parson further testified that after he fell the substance was "caked" on his pants, and he testified that he was relying on "his personal opinion" that the substance "wasn't [anything] that just happened that day or that morning or the day before. It had been there a while."  He admitted that other than his personal opinion, he had no other independent knowledge about how long the substance had been there.

¶6.     Parson also testified that the description of the substance's location in his complaint was "inaccurate."  He testified that the substance was located between two gas pumps, "on the inner side of the front pump," and "down the inside of [the] pump island," rather than between the front door and the gas pumps, or "in front near the door," as described in his complaint.  Parson also testified that the area of the substance was about "10 to 12 inches wide," not two feet wide, as described in his sworn interrogatory responses.

¶7.     Parson testified that when he fell, his prosthetic leg detached and his back struck the

3

raised curb near the gas pump. He said he was "sitting in [the substance]" and that a man pulled up in his car, got Parson's crutches from his truck, and helped him up. Parson testified that he reattached his prosthetic leg, went into the gas station and said to the clerk, "You need to get somebody to clean up out there before somebody really gets hurt."

¶8.     Plaintiff's mother, Martha Walt, was deposed on May 3, 2016. She testified that she stopped at the GK gas station for gas that morning and saw Parson "sitting on the ground . . . and some man had come over and picked him up." She testified that she parked her car, but did not get out of her car. She said that after he was up, Parson came over to her car and showed her his pants. She testified that Parson had "gook all over his . . . pants," and then she said, "I'm assuming that it was oil because it was at a service station. It was dark. . . . It was on his bluejeans. I can't exactly tell you what it looked like. . . . I didn't get out of the car and investigate it."

¶9.     Store employee, Candy Clifton, was deposed on May 4, 2016, and testified "that if gas and oil [were] out there [on the lot], of course I'm going to clean it up," but she said she had not seen oil on the lot and "never had to clean up oil." Clifton also testified that Parson came to the store twice on the day that he fell—once at about 8:00 a.m., and again at about 10:45 a.m. She testified that when he came in to the store at 8:00 a.m. he smelled of beer, and bought beer at that time. Parson bought beer again when he returned to the store later that morning, then he walked out of the store. Clifton testified that she did not see Parson fall, but just as she was finishing checking out the next customer, she looked up and saw Parson sitting on the gas pump island "messing" with his leg, so she ran to the door, saying "did that

4

man just fall?" She testified that she stood at the door and asked Parson if he was ok. Clifton testified that later that day she "went outside and looked to see if anything was on the ground where [Parson] claimed he fell . . . [and saw] [n]othing." She confirmed she saw no "liquids, debris or anything else."

¶10.    Another store employee, Jo Ann Terry, was also deposed on May 4. She testified that she went outside the store when Parson was still sitting on the gas pump island after his fall. She said that she did not see any substances in the area where Parson fell—"just the concrete."

¶11.    Stanley Gaines testified as the corporate representative for GK's 30(b)(6)[2] deposition. He testified that he walked the GK premises twice on the day of the incident, once at 7:30 a.m., and the second time at about noon, after Betty Ray called him to say Parson had fallen. He said he did not see anything of concern either time. He specifically testified that when he returned to the store at noon, he saw "nothing" in the area where Parson fell.

¶12.    GK moved for summary judgment in June 2017, asserting that Parson lacked sufficient proof of a dangerous condition on its premises or that GK had actual or constructive notice of the allegedly dangerous condition. In the same motion, GK also sought to dismiss Parson's lawsuit, with prejudice, for discovery abuse. In response, Parson argued that genuine issues of material fact existed with respect to the existence of a dangerous condition on GK's premises, and that GK had constructive notice of that

---

[2] *See* M.R.C.P. 30(b)(6).

condition. Parson acknowledged that there "was no proof of actual notice."[3]

¶13.    After a hearing on August 8, 2017, the circuit court entered an order granting GK's motion for summary judgment and, alternatively, GK's motion to dismiss for discovery abuse, and entered its final judgment dismissing Parson's lawsuit on September 25, 2017.[4] Parson appealed.

## STANDARD OF REVIEW

¶14.    An appeal from summary judgment is reviewed de novo and we view the evidence in the light most favorable to the non-movant. *Karpinsky v. American National Ins. Co.*, 109 So. 3d 84, 88 (¶9) (Miss. 2013); *Garson v. Circus Circus Mississippi Inc.*, 135 So. 3d 932, 934 (¶7) (Miss. Ct. App. 2014). Mississippi Rule of Civil Procedure 56 provides that "[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." M.R.C.P. 56(c). The movant "carries the initial burden of persuading the trial judge that no issue of material fact exists and that he is entitled to summary judgment based upon the established facts." *Garson*, 135 So. 3d at 934 (¶7); *Karpinsky*, 109 So. 3d at 89 (¶13). The non-movant, however, "carries the burden of producing sufficient evidence

---

[3] Parson had also filed a motion for summary judgment as to liability for alleged discovery abuses by GK, which the circuit court denied. Parson does not appeal this decision.

[4] As noted above, because we affirm the circuit court's summary judgment in GK's favor, we do not address Parson's challenge to the circuit court's alternative ruling dismissing his lawsuit, with prejudice, for discovery abuse.

of the essential elements of [his] claim at the summary-judgment stage, [just] as [he] would carry the burden of production at trial." *Karpinsky*, 109 So. 3d at 89 (¶13). In this regard, the non-movant "may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." M.R.C.P. 56(e). "Summary judgment is appropriate when the [non-movant] has failed to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Karpinsky*, 109 So. 3d at 89 (¶11).

## DISCUSSION

¶15.    "[T]o prevail on a negligence claim, the plaintiff must prove by a preponderance of the evidence each element of negligence: duty, breach of duty, proximate cause, and damages." *Patterson v. T. L. Wallace Const. Inc.*, 133 So. 3d 325, 331 (¶18) (Miss. 2013). It is undisputed in this case that Parson was a customer of GK's on the day that he fell, and is therefore considered a "business invitee" under Mississippi premises law. *Grammar v. Dollar*, 911 So. 2d 619, 624 (¶12) (Miss. Ct. App. 2005) ("A business invitee is defined as someone who enters onto another's premises at the invitation of the owner for the purpose of benefitting both parties.").

¶16.    "The duty of a business owner to an invitee is well-settled under Mississippi law and requires that the owner keep his premises in a reasonably safe condition." *Karpinsky*, 109 So. 3d at 89 (¶12). "Because the store owner is not an insurer of business invitees' injuries, mere proof that the invitee fell and was injured while on the premises is insufficient to

7

establish liability." *Jones v. Wal-Mart Stores E. LP*, 187 So. 3d 1100, 1104 (¶12) (Miss. Ct. App. 2016) (internal quotation marks omitted). Rather, "[t]he owner of the business premises has a duty to warn invitees of dangerous conditions which are not apparent to the invitee, of which the owner or occupier knows or through the exercise of reasonable care should know." *Treadwell v. Circus Circus Mississippi Inc.*, 942 So. 2d 221, 222 (¶6) (Miss. Ct. App. 2006).

¶17. To prove that a business owner was negligent, "the plaintiff must show either (1) the operator caused the dangerous condition, or (2) where a third person unconnected with the store's operation caused the condition, that the operator had actual or constructive knowledge of the condition." *Almond v. Flying J Gas Co.*, 957 So. 2d 437, 439 (¶8) (Miss. Ct. App. 2007).

¶18. Parson asserts that the oil/mud/water substance on GK's premises was a dangerous condition and that he presented sufficient evidence that GK had constructive notice of the substance on its property to avoid summary judgment in GK's favor. Parson does not assert that GK caused the substance to be on its premises; nor does Parson assert that GK had actual notice of the substance on its premises.

¶19. In granting summary judgment in GK's favor, the circuit court made no specific finding whether Parson showed that the "oil/mud/water" substance on GK's premises was a "dangerous condition." Rather, even assuming that the substance was a dangerous condition, the circuit court found that "Parson has failed to offer sufficient evidence to demonstrate constructive knowledge on the part of GK [of the substance on its premises]."

8

We agree and affirm summary judgment in GK's favor on this basis.[5]

¶20. "Constructive knowledge is established where the condition is shown to have existed for such a length of time that the operator, through the exercise of reasonable care, should have known of . . . its existence." *Almond*, 957 So. 2d at 439 (¶8). "In constructive-knowledge cases, a plaintiff opposing summary judgment must produce admissible evidence of the length of time that the hazard existed, and the court will indulge no presumptions to compensate for any deficiencies in the plaintiff's evidence as to the time period." *Cotton v. Fred's Stores of Tenn. Inc.*, 122 So. 3d 140, 143 (¶7) (Miss. Ct. App. 2013) (internal quotation mark omitted). "The plaintiff must present specific proof as to the relevant actual length of time." *Almond*, 957 So. 2d at 439 (¶8).

¶21. Parson asserts that (1) his deposition testimony about the consistency of the substance and (2) the deposition testimony of Martha Walt, his mother, that he had "gook" on his pants after his fall, constitute sufficient proof of GK's constructive notice to overcome summary judgment. Parson relies on *Evans v. Aydha*, 189 So. 3d 1225 (Miss. Ct. App. 2016), in support of his position. In *Evans*, Janet Evans slipped and fell on a "black spot" at JB's convenience store/gas station. 189 So. 3d at 1228 (¶8). In her deposition, Evans could not

[5] In one sentence in the summary of the argument section of his brief, Parson asserts that the "trial court erred in granting summary judgment in a situation where there was spoliation of key evidence (namely, by Appellee owner conveniently claiming the outside cameras did not work on the day of Appellant's fall)." There is no citation to authorities supporting this assertion or any other meaningful discussion about it in Parson's briefs. We therefore do not consider it. *Price v. Clark*, 21 So. 3d 509, 528 (¶50) (Miss. 2009) (court will not consider arguments not briefed on appeal); *Tupelo Redevelopment Agency v. Gray Corp.*, 972 So. 2d 495, 517 (¶66) (Miss. 2007) (failure to cite authority in support of claims of error precludes appellate review of those claims).

describe the spot or how long it had been there. *Id.* JB moved for summary judgment arguing, among other grounds, that Evans could not show that JB had constructive notice of the alleged hazardous condition. *Id.* at 1229 (¶11). In response, Evans offered the affidavit of her daughter, Loyd, in which Loyd explained that she had gone to JB's convenience store/gas station after her mother's fall and observed a black spot on the premises that she described as "'sludge,' 'dirty,' and, in her judgment, at least a few days old." *Id.* at 1230 (¶16). This Court held it was "satisfied that from the daughter's description of the spot, a reasonable inference can be made that it existed long enough to place JB's on constructive notice of its existence." *Id.*

¶22. Parson argues that his deposition testimony "mirrored that of the daughter in *Evans*" and therefore this Court should find that a reasonable inference can be made that GK had constructive notice of the substance on its premises based upon his testimony coupled with his mother's description of the "gook" on his pants. We disagree. Based upon our de novo review of the record and applicable precedent, we find that this evidence does not constitute sufficient proof to create a genuine issue of fact that GK had constructive notice of the substance on its premises, and therefore we affirm summary judgment in GK's favor.

¶23. We find *Cotton v. Fred's*, 122 So. 3d at 143 (¶8), instructive. In that case, Cotton slipped on spilled liquid in a Fred's store and contended that statements she made in her deposition were sufficient evidence that Fred's had constructive knowledge of the spill. *Id.* In rejecting this argument, this Court observed the inconsistencies between Cotton's deposition testimony and other statements she made in her deposition and arguments she

10

made in opposing summary judgment or on appeal. For example, Cotton testified in her deposition that the substance from the cooler "was spreading down the aisle," but she also testified "that it had already dried in certain parts, leaving behind a black residue." *Id.* We observed that "[t]he latter statement would support a finding that the spill had been there for a longer period of time; whereas, the former statement supports a finding that the spill was ongoing and much more recent." *Id.* Cotton also argued "that the spill had been on the floor so long that it was dirty because other customers had tracked dirt and debris though the spill," but in her deposition Cotton testified that "the substance was already dirty or black as it leaked out from under the cooler." *Id.*

¶24. This Court found that Cotton had failed to meet the constructive notice element of her negligence claim, stating: "[Cotton's] own inconsistent statements about the incident, particularly the length of time the hazardous condition had been present, do not support a finding that the summary-judgment motion should have been denied." *Id.* In concluding our opinion, we held that "the evidence submitted by Cotton [is] insufficient to create a genuine issue of material fact . . . [because] Cotton did not provide any consistent evidence that Fred's had constructive knowledge of the hazardous condition before the incident occurred." *Id.* at 144 (¶10).

¶25. The same principle applies in this case. Parson's deposition testimony about the consistency of the substance, its location, and its size, is inconsistent with statements and descriptions of the substance found in his complaint and sworn interrogatory responses, as illustrated in the chart below:

11

| Statement | Consistency | Location | Size |
|---|---|---|---|
| May 5, 2015 Complaint | "liquid substance"<br><br>"puddle of water, gas, oil[,] and/or greasy like substance" | "located between the gas pumps and the front door [of the store]"<br><br>"[T]he liquid substance was located in the front near the door." | |
| September 24, 2015 sworn interrogatory responses | "[T]he puddle was . . . some sort of motor oil due to the rainbow effect of the colors, and was very slick and thick." | | "[T]he size of the puddle was approximately 3 to 4 foot long and 2 feet wide." |
| May 3, 2016 deposition | "this listing [in the complaint] as it [the substance] being a puddle is incorrect;" "I wasn't in anything wet . . . when I landed."<br><br>"[T]he oil, gasoline, whatever it was mixed in with the dirt and whatever. Evidently, it was there and had been there for quite a while. It wasn't something that had just been applied. It had been there for a few days at least."<br><br>The substance was "caked" on Parson's pants after he fell. | Location description in the complaint was "inaccurate."<br><br>"I would have to disagree with that statement [in the complaint about the substance] being between the gas pumps and the front door, because it wasn't."<br><br>The substance was located between two gas pumps, "on the inner side of the front pump," and "down the inside of [the] pump island." | The substance was about "10 to 12 inches wide, 3 or 4 foot long." |

¶27.    As the chart shows, Parson's descriptions of the consistency of the substance varied

significantly throughout this litigation.  In his complaint, Parson described the substance as

12

a "liquid substance" and a "puddle of water, gas, oil[,] and/or greasy like substance."[6]  In his deposition, taken two years after the incident, Parson contradicted these prior statements, testifying that "[he] wasn't in anything wet . . . when [he] landed," and "the oil, gasoline, whatever . . . was mixed in with the dirt and whatever.  Evidently, it was there and had been there for quite a while.  It wasn't something that had just been applied.  It had been there for a few days at least."  Parson's description of the substance in his complaint would support a recent spill.  In comparison, his description of the substance in his deposition would support a finding that the spill had been there for a longer period of time.[7]

¶28.   As we found in *Cotton*, we likewise find here that "[Parson's] own inconsistent statements about the incident, particularly the length of time the hazardous condition had been present, do not support a finding that the summary-judgment motion should have been denied."  *Cotton*, 122 So. 3d at 143 (¶8).  Parson's failure to offer any consistent evidence of the length of time the substance was on GK's premises distinguishes this case from *Evans v. Aydha*, where we found that the length of time the black spot had existed on JB's premises could be reasonably inferred from the description of this spot in the affidavit submitted by

---

[6] In his sworn interrogatory responses, Parson described the substance as a "puddle" of "some sort of motor oil" that was "very slick" and "thick."  We find that it cannot reasonably be inferred from this description that the substance had been on the premises for any appreciable length of time.

[7] Parson's statements about the location and size of the substance were also inconsistent, ranging from a "liquid substance located in the front near the door [of the store]," as stated in Parson's complaint, to a substance between two gas pumps, "on the inner side of the front pump," and "down the inside of [the] pump island," as Parson described in his deposition.  Parson's description of the width of the substance varied from two feet wide, as described in his interrogatory responses, to ten to twelve inches wide, as he described in his deposition.

the plaintiff's daughter, Loyd. *Evans*, 189 So. 3d at 1230 (¶16). The Court found that the description of the black spot in Loyd's affidavit was not inconsistent with other evidence of record. *Id.* at 1228-29 (¶¶8-13). The plaintiff, Janet Evans, testified that she did not know how long the black spot had been there, *id.* at 1228 (¶8), and the few pages from Loyd's deposition in the record did not establish that there were any inconsistencies between her affidavit and her deposition testimony. *Id.* at 1229 (¶12). In this case, because Parson failed to "provide any *consistent* evidence that [GK] had constructive knowledge of the hazardous condition before the incident occurred," *Cotton*, 122 So. 3d at 144 (¶10) (emphasis added), Parson has failed to submit sufficient evidence to create a genuine issue of material fact on this issue.

¶29. We recognize that "[c]ircumstantial evidence may be used to prove the length of time a dangerous condition has existed." *Evans*, 189 So. 3d at 1230 (¶16). The "circumstantial evidence [, however,] must be such that it creates a legitimate inference that places it beyond conjecture." *Herrington v. Leaf River Forest Prod. Inc.*, 733 So. 2d 774, 777 (¶8) (Miss. 1999). Parson's inconsistent descriptions of the size, location, and, particularly, the consistency of the substance in this case fail to "remove the case from the realm of conjecture and place it within the field of legitimate inference" with respect to the time the substance existed in the GK premises. *Mississippi Valley Gas Co. v. Estate of Walker*, 725 So. 2d 139, 145 (Miss. 1998) (explaining that circumstantial evidence "must be sufficient to make plaintiff's asserted theory reasonably probable, not merely possible, and more probable than any other theory based on such evidence"), *overruled on other grounds by Adams v. U.S.*

14

*Homecrafters Inc.*, 744 So. 2d 736, 742-43 (¶¶18-21) (Miss. 1999); *Walz v. HWCC-Tunica Inc.*, 186 So. 3d 375, 378 (¶13) (Miss. Ct. App. 2016) (explaining that "circumstantial evidence that still leaves many inferences available is not sufficient as proof for necessary elements of a claim").

¶30. We also find that Walt's testimony that Parson had "gook" on his pants does not constitute the "specific proof" of the actual length of time the substance was on the premises that is required to show constructive notice on GK's part. *Almond*, 957 So. 2d at 439 (¶8). First, Walt's observation was limited to what she saw on Parson's pants. She did not observe the actual substance on the ground:

> Q. Did you have a chance to observe the substance your son fell in?
>
> A. Uh, no, I didn't.
>
> Q. All right. So sitting here today, you can't offer any testimony about the substance?
>
> A. That was on the ground, no, I can't. I just saw it on his clothes.

¶31. Second, even with respect to her observations about the substance on Parson's pants, Walt testified that she remained sitting in the driver's seat of her car when Parson came over and showed her his pants. From this vantage point she observed that Parson had "gook all over his . . . pants," which she "assum[ed] . . . was oil because it was at a service station." Walt ultimately admitted in her deposition that "I can't exactly tell you what it looked like . . . . I didn't get out of the car and investigate it." Given these circumstances, we cannot reasonably infer from Walt's testimony the length of time that the substance existed on the GK premises. *See Evans*, 189 So. 3d at 1230 (¶16) (explaining that circumstantial evidence

15

may be used to show constructive notice only if it "creates a legitimate inference that places it beyond conjecture" on that issue).

¶32. Further, Stanley Gaines, the GK store owner, testified in his deposition that he had not seen anything of concern on the premises when he walked the property earlier that morning before Parson's fall. Gaines also returned to the store about an hour after Parson's fall and testified that he did not see anything in the area where Parson had fallen. Store employees Candy Clifton and Jo Ann Terry also testified that they looked on the ground where Parson claimed he had fallen, and neither of them saw anything there.

¶33. In sum, based upon our de novo review of the record, we find that the evidence submitted by Parson was insufficient to create a genuine issue of material fact as to whether GK had constructive notice of the substance on its premises. We therefore affirm the circuit court's grant of summary judgment in GK's favor.

¶34. **AFFIRMED.**

**BARNES, C.J., J. WILSON, P.J., GREENLEE, WESTBROOKS, TINDELL, LAWRENCE AND C. WILSON, JJ., CONCUR. McCARTY, J., DISSENTS WITH SEPARATE WRITTEN OPINION. McDONALD, J., NOT PARTICIPATING.**

**McCARTY, J., DISSENTING:**

¶35. Because I believe summary judgment was premature, I dissent. This case presents a classic split in testimony, and only a jury can resolve it. We must remember that summary judgment should not be used to decide cases that we think are weak or that we just do not like. Instead, summary judgment is reserved exclusively for those cases where there is not a genuine dispute about a material fact.

16

¶36. There are plenty of disputes in this case—not the least of which is that the plaintiff has sworn he fell into some old gunk that made him slip. The fact that he fell was uncontested. There is another witness who has sworn that he also had something all over his pants. So we have two witnesses who have sworn to this fact. We also have a witness who has sworn there was nothing there and one who has apparently never seen oil spilled on the ground at a gas station. This type of testimony is standard in a trial.

¶37. This case is also almost *exactly* like one that this Court reversed just two years ago. *Evans v. Aydha*, 189 So. 3d 1225, 1227 (¶1) (Miss. Ct. App. 2016). It also involved a fall, a gas station, and an oily spot. *Id*. Critically, it also involved testimony that shifted over time. *Id*. at 1229 (¶10). The Court explained that "[the gas station] also seems to argue that [the plaintiff's] testimony should be disregarded because she testified that she had been looking where she was going, yet she did not see the black spot until after she fell." *Id.*

¶38. Despite this issue of credibility, the Court ruled that "[t]his is, at best, a subject for cross-examination." *Id*. The following precedent quoted by Judge Fair, writing for the majority, is directly applicable to this case:

> "[E]ven when the statements [of the plaintiff] are conflicting it is a jury question to determine which, in fact, is true." *Seymour v. Gulf Coast Buick Inc.*, 246 Miss. 805, 809, 152 So. 2d 706, 708 (1963) (citations omitted). "Contradictory statements by a witness go to the weight and credibility of that [witness's] testimony, not its sufficiency." *Jamison v. Barnes*, 8 So. 3d 238, 245 (¶17) (Miss. Ct. App. 2008). "[A] summary judgment motion does not place the trial court in the role of weighing testimony and determining the credibility of witnesses." *Id*.

*Id.* The majority here casts aside *Evans*, although it is directly on point, and trains its sights on the integrity and weight of the plaintiff's testimony—since testimonies differed a time or

17

three. The majority finds the testimony inconsistent and even makes a chart about the changes.

¶39. This chart would be great for a jury to see in closing argument. It would also be rocket fuel for a wild cross-examination. It is not just *Evans* in 2016 that stands for the proposition that credibility of a witness is for a jury to resolve. Since before anyone in our State was born, we have reserved questions about the credibility of a witness for a jury to resolve. For "the credibility, weight, and effect of the testimony in the one case, and the proper inferences and conclusions to be drawn from it on the other, belong exclusively to the province of the jury." *Fortner v. Parham*, 10 Miss. 151, 158 (2 S. & M. 1844). The way we say it now is that "[t]he jury determines the weight and credibility to give witness testimony and other evidence." *Gillett v. State*, 56 So. 3d 469, 505 (¶102) (Miss. 2010).

¶40. It is simply not for a judge (or a panel of judges) to weigh a witness's credibility.[8] There is no rule that allows it, and the better route is the one we have ridden down since at least 1844. A jury may ultimately believe the plaintiff in this case, or it may not. That is nothing we should guess at with a cold record, at a preliminary stage, and without the aid of a group of properly empaneled fact finders.

¶41. Nor is this "discovery abuse." First off, that is not a ground for summary judgment.

_____

[8] Not long after our State's founding, an early incarnation of our Supreme Court rejected the idea that an appellate court could resolve a split in testimony on appeal: "Unaccustomed as I am to determine facts, the weight of evidence, to decide upon the credibility of apparently interested witnesses, and to reconcile inconsistencies, I cannot undertake to pronounce a final decree, conclusive on the rights of the parties, with satisfaction to myself, without the intervention of a jury." *Hoggatt v. Hunt*, 1 Miss. 216, 217-18 (1 Walker 1826).

18

It *is* grounds for sanction under Mississippi Rule of Civil Procedure 37, although lesser sanctions must be considered first. For instance, when a plaintiff lied about who witnessed her injury during both her deposition and trial, the Supreme Court affirmed the "death penalty" of dismissing her complaint because no lesser sanction would cure perjury. *Pierce v. Heritage Properties Inc.*, 688 So. 2d 1385, 1387 (Miss. 1997); *accord Illinois Cent. Gulf R. Co. v. McLain*, 174 So. 3d 1279, 1281 (¶1) (Miss. 2015) (finding the plaintiff's failed attempt to get a witness to commit perjury could not be cured by a lesser sanction of $10,000 and requiring dismissal of case).

¶42. To say this was "discovery abuse" gives lawyers a reason to cry and squeal anytime a witness's testimony shifts and demand dismissal. The real way to deal with it is zealous cross-examination. We permit wide-open cross in Mississippi, and all wide latitude to show bias, motive, and attack credibility. 4 David Neil McCarty, *Encyclopedia of Mississippi Law*, Evidence §33:57, at 832 (2016). This lets the jury determine what the real story is—and rule as it sees fit in accord with our Constitution and Code.

¶43. To cast aside the plaintiff's claims at summary judgment invades the province of the jury and deprives a litigant of his day in court. Because I believe cases with facts in dispute should be resolved by a jury, including this one, I respectfully dissent.