# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-CA-00241-COA

**MARZETTIA MOORE**                                                              **APPELLANT**

**v.**

**ROUSE'S ENTERPRISES, LLC**                                                **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 10/09/2015 |
| TRIAL JUDGE: | HON. CHRISTOPHER LOUIS SCHMIDT |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | CAROL L. HENDERSON |
| ATTORNEYS FOR APPELLEE: | BRADLEY ADAM HAYS CHRISTOPHER OWEN MASSENBURG |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| TRIAL COURT DISPOSITION: | GRANTED APPELLEE'S MOTION FOR A DIRECTED VERDICT |
| DISPOSITION: | AFFIRMED - 05/16/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE LEE, C.J., BARNES, ISHEE AND GREENLEE, JJ.**

**BARNES, J., FOR THE COURT:**

¶1.     Marzettia Moore filed a negligence complaint against Rouse's Enterprises LLC (Rouse's) after she slipped and fell in a Rouse's grocery store.  At trial, the Harrison County Circuit Court, First Judicial District, granted Rouse's motion for a directed verdict, finding Moore had failed to satisfy her burden of proof for the premises-liability claim.  Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.     On September 10, 2010, Moore and her husband, Anthony Moore, were grocery

shopping at a Rouse's market located at 1345 Pass Road, Gulfport, Mississippi. While walking by a long "coffin" freezer that contained frozen seafood, Moore fell into a "split-leg" position. Although she did not see any water on the floor prior to her fall, a tiny puddle of water was observed in the area after her fall. Moore was taken by ambulance to the hospital where she was released a few hours later. The ambulance report stated that Moore had severe hip pain that "radiat[ed] down" her right leg, but she denied any "head, neck[,] or back pain." The hospital's report stated that in addition to hip pain, Moore had pain in her right upper arm and elbow, "low back pain," and "[r]ight ankle pain." Moore suffered only soft-tissue injuries; she did not have any fractures or require any surgery.

¶3. On March 14, 2011, Moore filed a negligence action against Rouse's, alleging that the water on the floor constituted a dangerous condition and that the store should have been aware of the water's presence. She sought damages for her medical expenses, compensatory damages, litigation costs, and court costs. A two-day jury trial began on October 6, 2015. Although Moore said that "you could see [water] coming out . . . [of] that freezer," she later acknowledged on cross-examination that, on the day of the accident, she did not recall seeing any water leaking from the freezer. Scott Neckels, the store manager, stated that he had inspected the store less than an hour before Moore fell, and that there was no water on the floor in that area. A "Manager's Floor Inspection Record" was entered into evidence, showing that Neckels completed his full store inspection at 6:05 p.m.; Moore fell at approximately 6:30 p.m. Additionally, a "Floor Cleaning Record" indicated that Rouse's maintenance personnel, Leo Lang, had "cleaned . . . and [ensured] that all floor areas [were]

2

free of spills, broken products, or any other hazard" at 6:11 p.m. Lang testified he saw no water on the floor at that time, and neither employee was aware of any water leaking from the freezer in question.

¶4. At the conclusion of Moore's case-in-chief, Rouse's moved for a directed verdict, asserting that: (1) Moore failed to present "credible, reliable causation evidence . . . outside of her lay opinion"; and (2) Moore failed to meet her burden of proof in establishing that Rouse's "caused the water to be on the floor" or had actual or constructive knowledge "that a potential hazard was on the floor at the time Mrs. Moore allegedly fell." In a bench opinion, the trial court granted Rouse's motion, finding that Moore "failed to establish a prima facie case for jury consideration." The trial court further determined that the issue of causation was moot based on its holding. On October 9, 2015, the circuit court entered its order, granting Rouse's motion for a directed verdict, as Moore failed to meet her burden of proof for the premises-liability claim, and dismissing Moore's claim with prejudice.

¶5. Moore filed a motion for reconsideration of the ruling, which the trial court denied.[1] On appeal, we find no error and affirm the judgment.

**STANDARD OF REVIEW**

¶6. "A motion for [a] directed verdict tests the legal sufficiency of the plaintiff's evidence," with the trial court considering "whether the evidence, as applied to the elements of a party's case, is either so indisputable, or so deficient, that the necessity of a trier of fact

---

[1] The circuit court treated the motion as a Mississippi Rule of Civil Procedure 59(e) motion to alter or amend the judgment, as it was filed within ten days of the entry of the judgment.

has been obviated." *McGee v. River Region Med. Ctr.*, 59 So. 3d 575, 578 (¶8) (Miss. 2011).

In reviewing a court's decision for a directed verdict, we "consider the evidence in the same light as the trial court." *Anderson v. B.H. Acquisition Inc.*, 771 So. 2d 914, 917 (¶5) (Miss. 2000) (quoting *Fulton v. Robinson Indus. Inc.,* 664 So. 2d 170, 172 (Miss. 1995)). Therefore, our standard of review is de novo. *Id*.

## ANALYSIS

¶7.     Moore claims that the trial court erred in granting Rouse's motion for a directed verdict, as the store's cooler caused the wet condition that caused her to fall.  It is undisputed that Moore was a business invitee of the store.  "A landowner owes a business invitee a duty of reasonable care for the invitee's safety." *Hudson v. Courtesy Motors Inc.*, 794 So. 2d 999, 1003 (¶9) (Miss. 2001).   "The duty owed by a premises owner to a business invitee is the 'duty to exercise reasonable or ordinary care to keep the premises in a reasonably safe condition.'"  *McSwain v. Sys. Energy Res. Inc.*, 97 So. 3d 102, 107 (¶11) (Miss. Ct. App. 2012) (quoting *Jones v. James Reeves Contractors Inc.*, 701 So. 2d 774, 782 (Miss. 1997)). As this Court noted in *Grammar v. Dollar*, 911 So. 2d 619, 624 (¶12) (Miss. Ct. App. 2005):

> In order for an invitee to recover in a slip-and-fall case, the invitee must (1) show that some negligent act of the defendant caused his injury; or (2) show that the defendant had actual knowledge of a dangerous condition and failed to warn the plaintiff; or (3) show that the dangerous condition existed for a sufficient amount of time to impute constructive knowledge to the defendant, in that the defendant should have known of the dangerous condition.

(Citing *Anderson*, 771 So. 2d at 918 (¶8)).

¶8.     We agree with the trial court that Moore failed to provide "record evidence" that Rouse's knew, or should have known, that water was present on the floor at the time of her

4

fall, or that the dangerous condition existed for a sufficient time that Rouse's should have had constructive knowledge of the condition. Moore acknowledged that she did not see any water leaking from the freezer. On cross-examination, she was asked the following:

> Q. . . . Do you have any personal knowledge as to how long the water may have been on the floor?
>
> A. No, I don't.
>
> Q. Do you have any personal knowledge that a Rouse's employee caused that particular water to be on the floor prior to your alleged fall?
>
> A. No, I don't.
>
> . . . .
>
> Q. You don't know that if any Rouse's employee knew it was on the floor prior to your alleged fall?
>
> A. No.
>
> Q. And you don't know how long the water may have been on the floor prior to your alleged fall?
>
> A. No, I don't.

Although Mr. Moore insisted that he saw water seep from underneath the freezer *after* the fall, he also acknowledged he had no personal knowledge that Rouse's knew any water was on the floor prior to his wife's fall. Furthermore, Neckels and Lang each conducted a store-wide inspection less than one hour before Moore's accident; neither saw any water on the floor in front of the freezer.

¶9. The trial judge also determined that evidence that one of Rouse's freezers had been repaired two days prior to the incident insufficient to establish that the freezer in question

5

was leaking, stating "there's never been any indication by Rouse's that this freezer had leaked or was leaking at the time." Neckels testified that the repair invoice submitted by Moore did not involve the freezer Moore claims was leaking:

> Q.    The maintenance record regarding an end cap. Do you recall that testimony?
>
> A.    Yes, sir.
>
> . . . .
>
> Q.    Is this the end cap? Is this an end cap of this freezer?
>
> A.    No, sir.
>
> Q.    How far away would an end cap be from this freezer?
>
> A.    The seafood frozen end cap would be ten – ten feet away from there. The end cap on that one is the meat department end cap. That's where they keep their red meat. It's in that. Then there is a space, then there is an end cap for frozen food. So if that case was leaking, it would have to go across the walkway down that aisle to get there.

¶10.   Therefore, we affirm the circuit court's judgment, granting Rouse's motion for a directed verdict. Moore's additional argument that medical-expert testimony is not required under the law to prove causation is moot.

¶11.   **THE JUDGMENT OF THE CIRCUIT COURT OF HARRISON COUNTY, FIRST JUDICIAL DISTRICT, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, CARLTON, FAIR, WILSON, GREENLEE AND WESTBROOKS, JJ., CONCUR.**