# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-CA-01576-COA

CLAIR HEARN                                                                      APPELLANT

v.

SQUARE PROPERTY INVESTMENTS, INC.                                    APPELLEE
D/B/A REED'S PIGGLY WIGGLY AND PIGGLY
WIGGLY

DATE OF JUDGMENT:            11/01/2018
TRIAL JUDGE:                HON. GERALD W. CHATHAM SR.
COURT FROM WHICH APPEALED:  DESOTO COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:     D. REID WAMBLE
ATTORNEY FOR APPELLEE:      RICHARD W. WACKERFUSS
NATURE OF THE CASE:         CIVIL - PERSONAL INJURY
DISPOSITION:                AFFIRMED - 03/24/2020
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

EN BANC.

GREENLEE, J., FOR THE COURT:

¶1.     After falling in a grocery store, Clair Hearn filed a premises-liability action in the DeSoto County Circuit Court against Square Property Investments Inc. d/b/a Reed's Piggly Wiggly (Piggly Wiggly). Piggly Wiggly moved for summary judgment, which the circuit court granted.

¶2.     Now Hearn appeals, claiming summary judgment was improper because there were genuine issues of material fact as to (1) whether a negligent act of Piggly Wiggly caused her injury, (2) whether a dangerous condition existed for a sufficient amount of time to impute constructive knowledge to Piggly Wiggly, (3) whether reasonable inspections would have

revealed the dangerous condition, and (4) whether Piggly Wiggly's internal policy is reasonable. We affirm the circuit court's grant of summary judgment.

**FACTS AND PROCEDURAL HISTORY**

¶3. On December 24, 2014, sixty-year-old Clair Hearn and her son, Mario Richmond, went to Piggly Wiggly in Olive Branch, Mississippi. Richmond drove Hearn to the store because she previously had had an aneurysm and a stroke, and she was unable to drive. The weather was cold but not raining.

¶4. According to Hearn, they had been at the store for less than ten minutes when she slipped and fell. Hearn was pushing a shopping cart and turned around to get an item. She then slipped and fell in what she believed was a puddle of water, approximately three feet in diameter, and injured her foot. According to Hearn, she did not realize there was a puddle until she fell, she did not know what caused the puddle, and she did not know how long the puddle had been on the floor. But it appeared to her as though other people had walked through the puddle.

¶5. Richmond also did not notice the puddle until after his mother fell, and he did not know what caused the puddle. According to Richmond, there were footprints and shopping-cart tracks in the puddle, but otherwise there was no indication as to how long the puddle had been there.

¶6. After Hearn filed a complaint in the DeSoto County Circuit Court and Hearn and Richmond's depositions had been taken, Piggly Wiggly filed an answer and a motion for summary judgment. In the motion for summary judgment, Piggly Wiggly disputed the

presence of any liquid on the floor but conceded the fact "for purposes of [the] [m]otion." Piggly Wiggly asserted that summary judgment was appropriate because Hearn could not establish the essential elements of a premises-liability claim. Piggly Wiggly attached a surveillance video as an exhibit to the motion.

¶7.     Hearn filed a response to the motion for summary judgment and attached, among other things, David Reed's deposition transcript. Reed, one of the store owners, admitted that Piggly Wiggly had no written policies and that all employees were trained verbally. When asked about safety inspections, Reed stated that "floor sweeps" were performed on an "as-needed" basis, but employees were trained to notice the floor conditions throughout the day. Reed stated that if a spill occurred, an employee was required to stand over the spill while another employee retrieved a mop and wet-floor signs. And the employees were trained to not leave the area until the floor was completely dry. Reed admitted the store did not maintain written "sweep logs," and he did not know when the floor was last checked prior to Hearn's fall.

¶8.     Ultimately, the circuit court granted Piggly Wiggly's motion for summary judgment. Now, Hearn appeals.

## STANDARD OF REVIEW

¶9.     A circuit court's grant of summary judgment is reviewed de novo. *Stuckey v. The Provident Bank*, 912 So. 2d 859, 864 (¶8) (Miss. 2005). "Summary judgment is proper when 'the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to judgment as a matter of law.'" *Robinson v. Martin Food Stores Inc.*, 231 So. 3d 1060, 1061 (¶2) (Miss. Ct. App. 2016) (quoting M.R.C.P. 56(c)). "The evidence is viewed in the light most favorable to the party opposing the motion." *Id*. at 1062 (¶3) (quoting *Davis v. Hoss*, 869 So. 2d 397, 401 (¶10) (Miss. 2004)). However, "an adverse party may not rest upon the mere allegations or denials of [her] pleadings, but [her] response must set forth specific facts showing that there is a genuine issue for trial." *Id*. (quoting M.R.C.P. 56(e)).

## DISCUSSION

¶10.    We must decide whether the circuit court erred by granting summary judgment. There is no dispute that Hearn was a business invitee. A business owner is not required to insure against all injuries; instead, he "owes a duty to an invitee to exercise reasonable or ordinary care to keep the premises in a reasonably safe condition or to warn of dangerous conditions not readily apparent, which the owner or occupant knows of, or should know of, in the exercise of reasonable care." *Coll v. Wal-Mart Stores East L.P.*, 232 So. 3d 748, 751 (¶9) (Miss. Ct. App. 2017) (quoting *Robinson v. Ratliff*, 757 So. 2d 1098, 1101-02 (¶12) (Miss. Ct. App. 2000)). "Mere proof 'of the occurrence of a fall on a floor within the business premises is insufficient to show negligence on the part of the proprietor.'" *Id*. (quoting *Stanley v. Boyd Tunica Inc*., 29 So. 3d 95, 97 (¶8) (Miss. Ct. App. 2010)).

¶11.    In a slip-and-fall case, the plaintiff "must prove one of the following to recover: (1) a negligent act of the defendant caused her injury; (2) the defendant had actual knowledge of the dangerous condition [and failed to warn her]; or (3) . . . the dangerous condition

existed for a sufficient amount of time to impute constructive knowledge to the defendant." *Rod v. Home Depot USA Inc.*, 931 So. 2d 692, 694-95 (¶10) (Miss. Ct. App. 2006).

¶12.   Hearn claims she provided evidence that a negligent act of Piggly Wiggly caused her injury and that a dangerous condition existed for a sufficient amount of time to impute constructive knowledge to Piggly Wiggly.  She further claims that genuine issues of material fact exist as to whether reasonable inspections would have revealed the dangerous condition and whether Piggly Wiggly's internal policies are reasonable.

### I.     Negligent Act

¶13.   Hearn claims she provided evidence that a negligent act of Piggly Wiggly caused her injury.  However, during her deposition, Hearn admitted that she did not know how the puddle of water came to be on the floor.  Hearn's son, Richmond, also did not know how the puddle got on the floor.  The store owner, Reed, was unaware that there was liquid on the floor and stated that he was informed Hearn fell because her leg gave out.  Hearn, Richmond, and Reed were the only people deposed, and there is nothing in the record to indicate that a negligent act of Piggly Wiggly or its employees caused Hearn's fall.  *See Haggard v. Wal-Mart Stores Inc.*, 75 So. 3d 1120, 1125 (¶12) (Miss. Ct. App. 2011).  Therefore, Hearn's "claim fails under this theory." *Id*.

### II.    Constructive Knowledge

¶14.   Next, Hearn claims she provided evidence that a dangerous condition existed for a sufficient amount of time to impute constructive knowledge to Piggly Wiggly. "Constructive knowledge is established where the condition is shown to have existed for such a length of

time that the operator, through the exercise of reasonable care, should have known of its existence." *Id*. at 1126 (¶15) (quoting *Almond v. Flying J Gas Co.*, 957 So. 2d 437, 439 (¶8) (Miss. Ct. App. 2007)). "Further, the court will not indulge presumptions for the deficiencies in plaintiff's evidence as to the length of time the hazard existed; therefore, the plaintiff must produce admissible evidence as to the time period in order to establish the operator's constructive knowledge." *Id*. "The plaintiff must present specific proof as to the relevant actual length of time." *Id*.

¶15. During their depositions, Hearn and Richmond stated that they did not see the puddle until after Hearn fell. And Hearn admitted that she did not know how long the puddle had been on the floor. However, both Hearn and Richmond stated that the puddle had footprints and shopping-cart tracks in it.

¶16. In support of her claim, Hearn cites to *Ducksworth v. Wal-Mart Stores Inc.*, 832 So. 2d 1260 (Miss. Ct. App. 2002). In *Ducksworth*, the plaintiff slipped and fell while shopping in Wal-Mart. *Id*. at 1261 (¶1). At trial, the plaintiff produced a photograph of the spill in question. *Id*. at 1262 (¶4). The spill appeared to be dirty, with footprints and shopping cart tracks in it. *Id*. This Court found "[*t*]*he photograph's* condition created a question of fact that should have been resolved by the jury." *Id*. (emphasis added). Therefore, this Court held that the trial court erred by granting a directed verdict. *Id*.

¶17. Although the purported puddle in this case allegedly had footprints and shopping-cart tracks in it, the photograph in *Ducksworth* was specific poof as to the "relevant actual length of time." Conceivably in *Ducksworth*, a jury could have looked at the photograph and

6

determined the length of time the spill was on the floor and whether it existed for such a length of time that the operator should have known of its existence. Here, Hearn and Richmond's deposition testimony gave no indication as to the "actual length of time" the puddle existed. Although they both stated that the puddle had footprints and shopping-cart tracks in it, this only proves that the puddle existed. Without more, it is impossible to determine whether that period of time was for several minutes or several hours.[1]

¶18. Furthermore, we were able to review the surveillance video in this case. Neither the puddle nor the footprints and shopping-cart tracks are evident. The surveillance video shows numerous people passing through the area prior to Hearn's fall, many of whom were pushing shopping carts.

¶19. After reviewing the record, we find that Hearn failed to present any evidence showing that Piggly Wiggly should have known that there was a puddle on the floor. Therefore, Hearn's "claim fails on this theory of liability." *Haggard*, 75 So. 3d at 1127 (¶16).[2]

---

[1] The dissent states, "There has never been a requirement that a plaintiff prove the time of the spill . . . ." However, as stated, this Court has held that "[c]onstructive knowledge is established where the condition is shown to have existed for such a length of time that the operator, through the exercise of reasonable care, should have known of its existence." *Haggard*, 75 So. 3d at 1126 (¶15). And "the plaintiff must produce admissible evidence as to the time period in order to establish the operator's constructive knowledge." *Id*.

[2] Hearn also cites to *Evans v. Aydha*, 189 So. 3d 1225 (Miss. Ct. App. 2016). In *Evans*, the plaintiff slipped and fell on an oily spot at a gas station. *Id*. at 1227 (¶1). The plaintiff produced an affidavit from her daughter, which stated that the spot was "mostly black, dirty, *and it was obvious to me that the oily residue had been on the pavement for an extended period of time, at least several days*." *Id*. at 1229 (¶11) (emphasis added). This Court held that a reasonable inference could be made that the spot existed long enough to place the gas station operator on constructive notice of its existence. *Id*. at 1230 (¶16). As discussed, such an inference cannot be made in this case.

7

### III. Reasonable Inspections

¶20. Next, Hearn claims that a genuine issue of material fact existed as to whether reasonable inspections would have revealed the dangerous condition. "Within a premises owner's duty to keep the premises reasonably safe is included a duty to conduct reasonable inspections." *Jones v. Imperial Palace of Miss. LLC*, 147 So. 3d 318, 321 (¶13) (Miss. 2014) (citing *Pigg v. Express Hotel Partners LLC*, 991 So. 2d 1197, 1200 (Miss. 2008)). However, "[t]he mere existence of a defect or danger is not enough to establish liability, unless it is shown to be of such a character or of such a duration that the jury may reasonably conclude that due care would have discovered it." *Id*. at 322 (¶14) (quoting *Moore v. Winn-Dixie Stores Inc*., 252 Miss. 693, 699, 173 So. 2d 603, 605 (1965)).

¶21. As discussed, Hearn has failed to present any evidence to show for what length of time the puddle existed. Although she and her son stated that the puddle had footprints and shopping-cart tracks through it, this only could prove that the puddle existed. We do not know if that period of time was several minutes or several hours. Even if Piggly Wiggly failed to conduct reasonable inspections, there is simply no evidence to conclude that the problem had existed for "such a duration that the jury may reasonably conclude that due care would have discovered it."[3] *Id*.

¶22. Hearn relies on *Elston v. Circus Circus Miss. Inc*. 908 So. 2d 771 (Miss. Ct. App. 2005). In *Elston*, the plaintiff slipped and fell in a puddle of water in the lobby of the Gold

---

[3] The surveillance video showed what appeared to be an employee stocking a nearby shelf prior to Hearn's fall. However, after the employee walked away, approximately fifteen people passed through the area where Hearn ultimately fell. And more than half of those people pushed loaded shopping carts over the area.

8

Strike Casino. *Id*. at 772 (¶3). Her fall occurred within the "immediate vicinity of some plants and within ten feet of the front desk." *Id*. And she fell within several hours of the time when the plants were usually watered. *Id*. at (¶5).[4] The casino had procedures in place to make sure there were no spills on the lobby floor. For example, employees were required to walk the lobby's floor twice an hour to check for spills. *Id*. at 773 (¶10). This Court found the "evidence [was] beyond speculation and sufficient for a jury to conclude that . . . Elston's injury was caused by a dangerous condition that Gold Strike created." *Id*. at 774 (¶12). And "[s]ince there was sufficient proof that the spill had been on the floor for at least several hours prior to the plaintiff's fall, this Court also found a jury question existed as to Gold Strike's constructive knowledge of the spill." *McCullar v. Boyd Tunica Inc*., 50 So. 3d 1009, 1013 (¶17) (Miss. Ct. App. 2010) (citing *Elston*, 908 So. 2d at 775 (¶14)).

¶23. Hearn points out that in *Elston*, this Court held that there was a question of fact as to whether the presence of water on the floor violated Gold Strike's duty to keep its premises in a reasonably safe condition. *Elston*, 908 So. 2d at 774 (¶11). In so holding, this Court noted that on the day of the accident, no one could testify as to the last time Gold Strike's employees inspected the lobby. *Id*. In the instant case, Reed similarly admitted that he did not know when the floor was last inspected prior to Hearn's fall. However, unlike *Elston*, there is no proof in this case that the spill had been on the floor for at least several hours. As discussed, Hearn has failed to put forth any proof that reasonable inspections would have led to the discovery of the dangerous condition, which could have been created by another

---

[4] The plants were usually watered on Thursday between 10 a.m. and 11 a.m., and Elston fell on a Thursday, between 1:45 p.m. and 2:45 p.m. *Id*. at 775 (¶14).

9

customer only minutes prior to her injury.[5]  Therefore, Hearn's "claim fails on this theory of liability."  *Haggard*, 75 So. 3d at 1127 (¶16).

### IV.    Policy

¶24.    Finally, Hearn claims that a genuine issue of material fact exists as to whether Piggly Wiggly's internal policy is reasonable.  Essentially, Hearn argues that Piggly Wiggly's mode of operating—conducting floor sweeps on an "as-needed" basis and not maintaining written policies or procedures—is negligent.  However, this Court has previously declined to set aside years of precedent to adopt the "mode of operation" theory.  *Byrne v. Wal-Mart Stores Inc.*, 877 So. 2d 462, 467 (¶13) (Miss. Ct. App. 2003); *see also Bonner v. Imperial Palace of Miss. LLC*, 117 So. 3d 678, 685 (¶23) (Miss. Ct. App. 2013).  We decline to do so again today.

### CONCLUSION

¶25.    Because Hearn failed to show the existence of a genuine issue of material fact, we find summary judgment was appropriately granted.

¶26.    **AFFIRMED.**

**BARNES, C.J., CARLTON, P.J., LAWRENCE AND C. WILSON, JJ., CONCUR.  J. WILSON, P.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.  McDONALD, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.  McCARTY, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY WESTBROOKS, TINDELL AND McDONALD, JJ.**

---

[5] The dissent acknowledges that the mere existence of a defect or danger is not enough to establish liability.  But the dissent seemingly disregards that the defect or danger must be "shown to be of such a character or of such a duration that the jury may reasonably conclude that due care would have discovered it."  *Jones*, 147 So. 3d at 322 (¶14).

**McCARTY, J., DISSENTING:**

¶27.    Because there was proof that Piggly Wiggly failed to exercise reasonable care to keep its floors reasonably safe, and because proof the spill had been there long enough to impute constructive notice existed, we should reverse and remand for a jury trial. Even standing alone, either of these issues is enough to go to a jury—especially when there is a three-foot-large puddle of water with track marks and footprints in it.

¶28.    Like all businesses open to the public, the grocery store has a duty to "exercise reasonable care to keep the premises in a reasonably safe condition." *Elston v. Circus Circus Miss. Inc.*, 908 So. 2d 771, 773 (¶9) (Miss. Ct. App. 2005) (quoting *Jerry Lee's Grocery v. Thompson*, 528 So. 2d 293, 295 (Miss. 1988)). "No proof of the owner's knowledge of the condition is necessary where the condition is created by his negligence or the negligence of someone under his authority." *Id*.

¶29.    In this case, Piggly Wiggly admitted in its response to interrogatories, "We do not have particular people assigned for floor maintenance." The Mississippi Rule of Civil Procedure 30(b)(6) representative for the company, Reed, also testified that he was "not sure exactly" when the floors had last been checked for spills—an inevitable reality since there were no times or schedules to inspect the floors, which were just looked at when they were looked at. The grocery store seems to have taken an "ostrich" policy, ignoring its legal duty to keep the premises reasonably safe.

¶30.    This approach is flatly opposite many of the decisions we review since abandonment or neglect of this duty can lead to a breach of duty and liability. For instance, in *Elston*, the

11

casino showed proof it "maintained its premises in a reasonably safe condition" by specifically showing it had two employees who "walk the entire lobby floor at least twice an hour" and "are hired for the specific purpose of insuring that there is no debris, no stains, and no spills." *Elston*, 908 So. 2d at 773 (¶10); *see also Winn-Dixie Supermarkets v. Hughes*, 247 Miss. 575, 588, 156 So. 2d 734, 738 (1963) (Where there was a "requirement of the management for employees to give notice of foreign substances on the floor," a jury could have found liability in a slip and fall.).

¶31. This does not mean Piggly Wiggly is automatically liable for Ms. Hearn's fall—but it surely means that there is a jury question of whether the business owner used reasonable care to keep the premises reasonably safe or whether its own negligence created the hazard.

¶32. As to the second reason why summary judgment should never have been granted, there is a genuine issue of material fact as to constructive notice. "To establish a negligence claim in a slip and fall case, proof that the liquid's presence on the floor for a sufficient amount of time to give reasonable notice to the proprietor is required." *Waller v. Dixieland Food Stores Inc*., 492 So. 2d 283, 286 (Miss. 1986).

¶33. Importantly, the test is not whether the defendant *conclusively knew* of a spill—but instead, whether it "knew, or *should have known*" there was a problem. *Moore v. Rouse's Enters. LLC*, 219 So. 3d 599, 602 (¶8) (Miss. Ct. App. 2017) (emphasis added).

¶34. There are a graveyard of slip and fall cases where litigants asked us to find constructive notice, but even taken in the light most favorable to them, the evidence showed that the complained of puddle had not been there very long. For instance, in *Waller*,

12

evidence of a pink liquid which "did not appear smeared and it did not appear as if anyone had pushed a buggy through it," was not enough to impute notice. *Waller*, 492 So. 2d at 286.

¶35. Likewise, in a case where the plaintiff "himself admitted that the liquid was clear, did not have tracks or debris in it, and did not appear to have been there for very long," and there was no other evidence of the passage of time or notice, we affirmed a grant of summary judgment. *Robinson v. Martin Food Stores Inc.*, 231 So. 3d 1060, 1062 (¶6) (Miss. Ct. App. 2016). In that case, speculation that a beer deliveryman had created the puddle also floundered when he "denied that he could have left the puddle" when stocking a cooler. *Id*.

¶36. Today's appeal is the opposite of those decisions. First of all, Ms. Hearn testified that it was not just a "slick spot" she fell in, but a puddle. Her son Mario testified the puddle was around three feet across. Further, and as pointed out by the majority, "both Hearn and Richmond stated that the puddle had footprints and shopping-cart tracks in it." *Ante* at (¶15). Ms. Hearn also testified the "bottom of [her] pants were wet," and her right pants leg was also wet after she fell down. This is exactly the type of evidence sufficient to create a genuine issue of material fact, and it is the crucial missing component that required affirmance in *Waller* and *Robinson*.

¶37. Importantly, it does not appear that their testimony was contradicted by the store; as such, it should be accepted as true and be submitted to a jury for a resolution of their claims since "[u]ndisputed testimony, which is not so unreasonable as to be unbelievable, must be taken as truth." *Estate of Burford v. Freeman*, 281 So. 3d 942, 947 (¶14) (Miss. Ct. App. 2019) (quoting *Reeves Royalty Co. v. ANB Pump Truck Serv.*, 513 So. 2d 595, 599 (Miss.

13

1987)). "For in the absence of contradictory evidence, courts are bound to accept the only credible evidence offered in a proceeding and apply the correct law." *Id.* (internal quotation mark omitted) (quoting *Miss. State Univ. v. People for the Ethical Treatment of Animals Inc.*, 992 So. 2d 595, 607 (¶20) (Miss. 2008)). The majority suggests that a photograph or video may be better proof than the sworn testimony of two Mississippians; however, it is evidence just the same as their sworn statements.

¶38. When the majority concludes that "[w]ithout more" as to the time of the spill, "it is impossible to determine whether that period was for several minutes or several hours," it confuses the burden of the plaintiff to respond at the summary judgment stage with the duty of the landowner, and it leaves out the role of the factfinder completely. *Ante* at (¶17). There has never been a requirement that a plaintiff prove the time of the spill—a burden that of course they could not meet since they do not control or supervise the premises. They could testify to what was in their personal observation (that there were track marks and buggy marks in the puddle and that they were wet), but any comment on how long the puddle would have been there is likely speculative and not competent summary judgment evidence. Whether the surveillance tape showed a completely clear puddle is a good closing argument, but it just further shows a split in the evidence. A jury should resolve it.

¶39. This case presents a classic question for the jury, and it should reach one. Because today we cut off that proper route, I respectfully dissent.

**WESTBROOKS, TINDELL AND McDONALD, JJ., JOIN THIS OPINION.**